**In re GUPTA CORPORATION SECURITIES LITIGATION.**

**C 94–1517 FMS.**

United States District Court,
N.D. California.

Dec. 6, 1994.

---

**1226**

Blake M. Harper, Alan Schulman, William S. Lerach, Milberg Weiss Bershad Hynes & Lerach, San Diego, CA, Robert N. Kaplan, Kaplan Kilsheimer & Fox, New York City, Kevin M. Prongay, Prongay & Mikolajczyk, Pacific Palisades, CA, Mark Solomon, Los Angeles, CA, for plaintiff Jafar Hooman.

Jonathan S. Kitchen, Baker & McKenzie, San Francisco, CA, James L. Quarles, III, Geoffrey S. Stewart, Daniel Levin, Hale and Dorr, Washington, DC, for defendants Umang P. Gupta, Gupta Corporation, Nicholas Birtles, Richard J. Heaps, Richard M. Noling, D. Bruce Scott, Reed D. Taussig.

Terry T. Johnson, Aileen L. Arrieta, Tanya R. Meyers, Wilson Sonsini Goodrich & Rosati, Palo Alto, CA, for defendants Kanwal Rekhi, Novell Inc., Douglas Carlisle, Anthony Sun.

Barbara E. Small, Brenda G. Woodson, Oracle Corporation, Redwood City, CA, for third-party defendant Oracle Corporation.

## ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS IN PART AND DENYING DEFENDANTS' MOTION TO DISMISS IN PART; ORDER DENYING PLAINTIFFS' MOTION TO STRIKE

### Introduction

FERN M. SMITH, District Judge.

Plaintiffs in this securities fraud class action suit allege that defendants have violated Sections 10(b), 20(a), and 20A(a) of the Securities Exchange Act of 1934 (the "1934 Act"), 15 U.S.C. §§ 78j(b), 78t(a), 78t–1(a). Plaintiffs bring this action on behalf of themselves and all other persons who purchased stock in Gupta Corporation ("Gupta") between September 13, 1993 and July 6, 1994 (the "class period"). The complaint names as defendants Gupta, six Gupta executives, a corporate shareholder, and two outside directors.

Defendants have filed several motions to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). Plaintiffs have filed a cross-motion to strike four of the exhibits attached to defendants' motions to dismiss. For the reasons set forth below, defendants' motions are granted in part and denied in part. As the exhibits disputed in plaintiffs' motion to strike are not relevant to the Court's decision, plaintiffs' motion to strike is denied as moot.

### Background

Gupta is a California corporation that develops and sells client-server system software for personal computer networks. Gupta was founded in 1984 and went public on February 4, 1993 with an initial public offering ("IPO") of 2.2 million shares at $18 per share. The company's stock is traded on the NASDAQ Exchange. On the first day of the IPO, Gupta's share price rose to $35¼. Thereafter, however, the stock price began to decline, reaching $14½ by September 1993. In the latter part of 1993, Gupta's stock began to rebound from this low point.

On April 25, 1994, Gupta's management announced that the company had not met revenue expectations for the first quarter of 1994. In response to this announcement, Gupta's stock fell from $22⅞ per share to $13½ per share. The stock price remained volatile, but generally continued to decline, over the next several months. On July 6, 1994, Gupta made a statement anticipating substantial losses for the second quarter of 1994. The company's share price fell to $8¾ per share the next day.

Plaintiffs filed their original complaint on May 2, 1994. On August 4, 1994, plaintiffs filed their first amended complaint, which enlarged the class period to include September 13, 1993 to July 6, 1994. During the class period, Gupta's stock traded as high as $30½ per share. By the end of the period, the price fell to $8¾ per share or lower. Plaintiffs allege that Gupta and the named defendants violated federal securities laws by issuing false and misleading information about the company in an effort to inflate the price of Gupta stock for the purpose of selling their own stock at a substantial profit.

In addition to Gupta Corporation, plaintiffs name six Gupta executives as defendants: Umang Gupta, Chairman of the Board, Chief Executive Officer, and President of Gupta; D. Bruce Scott ("Scott"), Senior Vice President of Research and Development, and a Director of Gupta; Richard M. Noling ("Nol-

ing"), Senior Vice President, Finance and Administration and Chief Financial Officer; Nicholas Birtles ("Birtles"), Senior Vice President, European Operations, and subsequently Executive Vice President, Worldwide Sales and Operations; Richard J. Heaps ("Heaps"), Vice President, Business Development and General Counsel; and Reed D. Taussig ("Taussig"), Gupta's Senior Vice President, North American Operations, for most of the class period. The plaintiffs also name as defendants Novell, Inc. ("Novell"), a corporate shareholder of Gupta; Kanwal Rekhi ("Rekhi"), an Executive Vice President and a Director of Novell, who sits on Gupta's Board of Directors; and Douglas C. Carlisle ("Carlisle"), a Director of Gupta and member of the Board of Director's committees on audit and compensation.

### I. Plaintiffs' Allegations

After the price of Gupta stock fell to $14½ per share in September 1993, defendants devised a plan to boost the stock price in order to sell portions of their personal holdings of Gupta stock at a substantial profit. To achieve this result, defendants made material misrepresentations about Gupta's revenues and general financial condition, and failed to disclose internally known adverse facts concerning Gupta's products, management and competitors. For example, defendants inflated Gupta's financial results by recognizing revenue on sales which were not completed sales under Generally Accepted Accounting Principles ("GAAP"), and defendants failed to disclose that Gupta's sales and marketing efforts were in disarray.

Defendants disseminated false information to the market through false statements of earnings and reports to shareholders, false documents filed with the Securities and Exchange Commission ("SEC"), and false press reports based on the fraudulent financial reports. In addition, defendants held numerous meetings with securities analysts in order to pass the fraudulent information to the market through the analysts' reports.

Defendants' fraud-on-the-market was a success. During the class period, defendants sold 695,000 shares in Gupta Corporation for total proceeds of $14.2 million. The individu-

al named defendants and Novell can be held accountable for the deception of the investing public under theories of group published information, control person liability, and insider trading.

### II. Defendants' Rebuttal

Gupta has experienced rapid growth, but fluctuating earnings, over the past several years. The price of Gupta's stock, like that of many other software securities, has been highly volatile throughout its trading history. During the class period, defendants sold only a small fraction of their Gupta stock; as a result, defendants suffered an enormous loss, along with the investing public, when the price of the stock declined.

Plaintiffs' complaint, filed after one significant drop in Gupta's stock price and amended after a second decline, is without merit. Based almost entirely on "information and belief," the complaint's allegations are non-actionable because they are alleged without the required specificity; concern mere expressions of optimism and statements about general economic conditions; and/or are general statements or omissions relating to future performance. Moreover, Gupta is not legally responsible for the statements by analysts, and Gupta's statements "bespeak caution." Finally, none of the statements made by defendants after the date on which plaintiffs filed their original complaint are actionable, because plaintiffs were aware of the company's problems by that date. The allegations against the individual Gupta defendants, the outside directors and Novell are similarly without merit.

### Discussion

### I. Legal Standard

#### A. Motion to dismiss

■ A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the complaint. *North Star Int'l v. Arizona Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir.1983). Dismissal of an action pursuant to Rule 12(b)(6) is appropriate only where it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Levine v. Diam-*

*anthuset, Inc.,* 950 F.2d 1478, 1482 (9th Cir. 1991) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957)). The Court may dismiss the complaint, or any claims within it, as a matter of law for either of two reasons: (1) lack of a cognizable legal theory, or (2) insufficient facts to support a cognizable legal theory. *Robertson v. Dean Witter Reynolds, Inc.,* 749 F.2d 530, 534 (9th Cir.1984) (citations omitted). In reviewing a motion to dismiss, the Court must assume that all factual allegations are true, and must construe them in the light most favorable to the non-moving party. *North Star Int'l v. Arizona Corp. Comm'n,* 720 F.2d 578, 580 (9th Cir.1983). The Court need not, however, accept legal conclusions pled in the complaint even if they are asserted as "facts." *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 2944–45, 92 L.Ed.2d 209 (1986).

■ When ruling on a motion to dismiss, the court may consider a variety of documents in addition to the complaint. First, the court may consider documents attached to the complaint. *Durning v. First Boston, Corp.,* 815 F.2d 1265, 1267 (9th Cir.1987), *cert. denied,* 484 U.S. 944, 108 S.Ct. 330, 98 L.Ed.2d 358 (1987). Second, the court may consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *Branch v. Tunnell,* 14 F.3d 449, 454 (9th Cir.1994), *cert. denied,* —— U.S. ——, 114 S.Ct. 2704, 129 L.Ed.2d 832 (1994). Third, the court may review "public disclosure documents required by law to be and which actually have been filed with the SEC." *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir. 1991), *cert. denied,* 503 U.S. 960, 112 S.Ct. 1561, 118 L.Ed.2d 208 (1992).

### B. Complaints Alleging Fraud

■ Allegations of fraud must satisfy the requirements of Fed.R.Civ.P. 9(b) to survive a motion to dismiss. Rule 9(b) provides that

> In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condi-

tion of mind of a person may be averred generally.

The intent of Rule 9(b) is to "prevent the filing of claims merely to discover unknown wrongs." *In re GlenFed, Inc. Sec. Litig.,* 11 F.3d 843, 847 (9th Cir.1993) (citing *Semegen v. Weidner,* 780 F.2d 727, 731 (9th Cir.1985)).

■ To satisfy the dictates of Rule 9(b), securities class action plaintiffs must allege fraud with enough particularity to give defendants notice of the specific charges against them so that defendants may respond to the charges. *Kaplan v. Rose,* Fed.Sec. L.Rep. (CCH) ¶ 98,422, 90,874, 49 F.3d 1363 (9th Cir.1994); *Neubronner v. Milken,* 6 F.3d 666, 671–72 (9th Cir.1993). A complaint satisfies this standard if it "state[s] precisely the time, place, and nature of the misleading statements, misrepresentations, and specific acts of fraud." *Kaplan,* Fed.Sec.L.Rep. (CCH) ¶ 98,422 at 90,874, 49 F.3d at 1370. *See also, Neubronner,* 6 F.3d at 672. The requirements of Rule 9(b) may be "relaxed as to matters peculiarly within the opposing party's knowledge," if the plaintiffs cannot be expected to have personal knowledge of the facts prior to discovery. *Wool v. Tandem Computers, Inc.,* 818 F.2d 1433, 1439 (9th Cir.1987) (citations omitted).

## II. Rule 10(b) Claims

### A. Legal standard

■ Rule 10b–5, 17 C.F.R. § 240.10b–5, enacted pursuant to Section 10(b) of the 1934 Act, makes it unlawful "[t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." To successfully allege securities fraud under Rule 10b–5, plaintiffs must allege reliance on a material misstatement, and scienter. *See Hanon v. Dataproducts Corp.,* 976 F.2d 497, 506–07 (9th Cir.1992).

■ Plaintiffs may allege reliance using the fraud-on-the-market theory. "In the usual claim under Section 10(b), the plaintiff must show individual reliance on a material misstatement. Under the fraud on the market theory, the plaintiff has the benefit of a presumption that he has indirectly relied on

the alleged misstatement, by relying on the integrity of the stock price established by the market." *In re Apple Computer Sec. Litig.,* 886 F.2d 1109, 1113–14 (9th Cir.1989). Defendants may respond to a claim of fraud-on-the-market by asserting that the information allegedly withheld from the market had in fact entered the market. *Id.* at 1114.

█ Scienter is defined as an intent to deceive, manipulate or defraud. *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 193–94 n. 12, 96 S.Ct. 1375, 1381 n. 12, 47 L.Ed.2d 668, *reh'g denied,* 425 U.S. 986, 96 S.Ct. 2194, 48 L.Ed.2d 811 (1976); *In re GlenFed, Inc. Sec. Litig.,* 11 F.3d 843, 847 (9th Cir.1993); *Hanon v. Dataproducts Corp.,* 976 F.2d 497, 507 (9th Cir.1992). Consistent with this definition, a complaint must allege facts showing conduct "involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it." *Hollinger v. Titan Capital Corp.,* 914 F.2d 1564, 1569 (9th Cir.1990) (en banc), *cert. denied,* 499 U.S. 976, 111 S.Ct. 1621, 113 L.Ed.2d 719 (1991) (citations omitted). Although Rule 9(b) allows scienter to be pled generally, courts have required that the facts pled support a strong inference of fraudulent intent. *O'Brien v. National Property Analysts Partners,* 936 F.2d 674, 676 (2d Cir.1991).

### B. Accounting Allegations [1]

¶¶ 34–35, 36–37, 39–40, 41, 44–45, 46–50, 51–53, 54, 55, 56, 57–58, 59, 60–65, 67–68, 69–70, 71, 74, 75–76, 88, 89, 90(a), 90(b), 90(c), 90(d), 90(f), 90(g), 90(j), 90(*l* )

1. *Most of Plaintiffs' Allegations of Fraudulent Accounting Do Not Satisfy the Requirements of Rule 9(b) and Rule 10b–5.*

Plaintiffs' main contention in this action is that Gupta's financial records for the third and fourth quarters of 1993 and the first quarter of 1994 were materially false because the defendants knowingly utilized accounting practices which violate GAAP. Plaintiffs allege, for example, that

¶ 90(a): Gupta's third and fourth quarter 1993, year-end 1993, and first quarter 1994 results of operations were materially overstated in violation of GAAP due to Gupta's recording revenue on false sales, failure to take appropriate reserve for returns of product and having inadequate reserves for doubtful accounts receivable[.]

¶ 88(a): Gupta improperly recognized revenue from software licensing agreements prior to fulfilling its obligations under the agreements and prior to an exchange occurring[.]

¶ 89(c): Gupta's financial statements issued during the Class Period failed to comply with the accounting principle of conservatism, which requires that a conservative approach be taken in the accounting for transactions and the early recognition of unfavorable events.

Like all other allegations of securities fraud based on Rule 10b–5, plaintiffs' claims must satisfy the particularity requirement of Rule 9(b). With the exception of three specific claims of fraudulent accounting directed at Gupta's results for the first quarter of 1994, plaintiffs' allegations do not meet this threshold test.

The Ninth Circuit, in its most recent application of the requirements of Rule 9(b) to allegations of accounting fraud under Rule 10b–5, upheld the plaintiff shareholders' action against Wells Fargo Bank. *In re Wells Fargo Sec. Litig.,* 12 F.3d 922 (9th Cir.1993). The *Wells Fargo* plaintiffs alleged that the bank had set aside insufficient reserves to support the bank's loan portfolio. In finding the allegations actionable, the court emphasized ·that the shareholders listed specific loans which the bank allegedly overvalued, and estimated the amount of the alleged overvaluation. *Id.* at 926–27. In rejecting Wells Fargo's position, the court stated

---

**1.** All paragraph references are to plaintiffs' first amended complaint, unless otherwise noted. Individual paragraphs in plaintiffs' amended complaint often contain multiple allegations. For simplicity, the Court lists all those paragraphs which deal in whole or in part with the allegations under discussion.

Wells Fargo initially asserts that "an increase in the loan loss reserve, without more, does not warrant an inference of fraud," and "that an increase in the loan loss reserve from one quarter to the next does not alone imply that earlier estimates of the reserve were fraudulently understated." Yet, the shareholders' allegations do aver "something more": the deliberate failure to disclose the status of certain specific loans extended to identified borrowers. *Id.* The *Wells Fargo* court concluded by stating that the shareholders' allegations successfully "distinguish their situation from that of many other[ ] [investors] who are adversely affected by business reverses." *Id.* at 928 (quoting *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir.1990), *cert. denied*, 498 U.S. 941, 111 S.Ct. 347, 112 L.Ed.2d 312 (1990)).

■ In short, *Wells Fargo* requires that allegations of financial fraud be pled with at least some supporting facts beyond mere observations of adverse financial events. Thus, under *Wells Fargo*, the assertion that the defendant company increased its reserves for uncollectible accounts receivable is not, by itself, sufficiently indicative of fraud to survive a motion to dismiss. Plaintiffs in this action cannot even point to an historical correction of reserves or revenues, or any other financial incident, to support their allegations of fraudulent accounting in the third and fourth quarters of 1993.

Several courts in this district have applied *Wells Fargo* to dismiss allegations of accounting fraud which are comparable to or stronger than plaintiffs' claims. For example, in *In re Ross Sys. Sec. Litig.*, Fed.Sec. L.Rep. (CCH) ¶ 98,363, 1994 WL 583114 (N.D.Cal.1994), the court dismissed allegations including the following:

Ross' reserves of only $1.5 million for total receivables of $33.2 million ... were understated by at least $2 million.... Ross was ... deferring the write-off of these receivables until future quarters where it hopefully would have higher revenues ... [D]efendants knew that revenues had been recognized where the earnings process was not complete, resulting in Ross having to ultimately report charges in excess of $4 million against accounts receivable ...

*Id.* at 90,498. In dismissing plaintiff shareholders' claims, the *Ross* court explained that "[u]nlike the allegations upheld in *Wells Fargo*, where the plaintiff identified nine specific loans not reflected in the company's report of its loan loss reserves, the allegations here do not specify particular transactions underlying defendants' alleged accounting deficiencies." *Id.* at 90,499.

In *Adam v. Silicon Valley Bancshares*, 1994 WL 619300, 1994 U.S.Dist. LEXIS 2797 (N.D.Cal.1994), the court dismissed allegations of accounting fraud where "the complaint itemizes the accounting procedures allegedly violated, [but] fails to sufficiently allege any facts about how each of the stated GAAS and GAAP [was] actually violated." *Id.* at *2, 1994 U.S. Dist. LEXIS 2797 at *5. The court noted in a footnote that "[i]n the past, this court as well as other district[ ] courts within the Ninth Circuit have held that similar allegations comport with Rule 9(b)'s particularity requirement. However, recent holdings by the Ninth Circuit indicate that such pleadings are not sufficient." *Id.* at n. 1 (citing *Wells Fargo* and *In re Glen-Fed, Inc. Sec. Litig.*, 11 F.3d 843 (9th Cir. 1993)) (internal citations omitted).

At least one court in this district dismissed allegations of accounting fraud similar to plaintiffs' claims before *Wells Fargo* was decided. In *Rogal v. Costello*, Fed.Sec.L.Rep. (CCH) ¶ 97,245, 1992 WL 426467 (N.D.Cal. 1992), the plaintiffs contended that the defendants recognized revenue from transactions that were not yet complete or for which an exchange had not yet taken place. *Id.* at 95,092. The court dismissed the allegations on the grounds that "[p]laintiffs have failed to state any factual basis for their conclusions that defendants have committed fraud in preparing their financial statements. They do not cite to a single transaction for which revenue was improperly recognized." *Id.*

Plaintiffs cite no case from this district or circuit more recent than 1990 for the proposition that their accounting allegations are sufficiently specific to satisfy Rule 9(b). Ac-

cordingly, with the exception of the three claims discussed below, plaintiffs allegations of financial fraud are dismissed with leave to amend to state more particularized allegations in compliance with Rule 9(b).

2. *Three of Plaintiffs' Allegations of Fraudulent Accounting are Pled with Sufficient Particularity to Satisfy Rule 9(b).*

Three of plaintiffs' allegations of financial fraud in the first quarter of 1994 are pled with sufficient particularity to satisfy Rule 9(b). These allegations are that (1) Gupta failed to set aside adequate reserves in the first quarter of 1994 for the possibility that one of the company's main distributors would file for bankruptcy (¶ 88(c)); (2) Gupta improperly booked $1.1 million in sales that were not completed sales under GAAP (¶ 63); and (3) Gupta failed to make adequate reserves for returns of an old version of Gupta's SQL Windows software when a new version of the product was released (¶ 88(d)).

On June 2, 1994, Gupta announced that the company was increasing its reserves by $1 million to cover potentially uncollectible accounts receivable related to the bankruptcy of a German distributor of the company's products. Plaintiffs allege that Gupta knew of the German company's precarious financial condition by at least late 1993, but continued to make large product shipments to the company without raising reserves.[2] On July 25, 1994, Gupta revised its results for the first quarter of 1994 by de-booking $1.1 million in sales which were originally credited to the period. Plaintiffs allege that the sales were originally booked with the intent to defraud the investing public by inflating the company's stated revenue. Finally, plaintiffs contend that Gupta made inadequate reserve allocations to compensate for the return of obsolete copies of SQL Windows when the company introduced a new version of the product. By alleging specific details of these three allegedly fraudulent accounting entries, plaintiffs have satisfied the requirements of Rule 9(b).

Defendants admit that plaintiffs have stated these three allegations with the particularity required by Rule 9(b). Defendants contend that these claims should nevertheless be dismissed because plaintiffs fail to sufficiently plead scienter or materiality.[3]

With respect to plaintiffs' allegations that Gupta overstated revenues in the first quarter of 1994 and failed to set aside adequate reserves in the same quarter to cover the possible bankruptcy of a German distributor, defendants are mistaken. The materiality of a $1.1 million dollar correction to revenue, which causes earnings to be restated from a profit of $520,000 to a loss of $250,000, and which represents more than 5 percent of total revenues, is beyond question. Similarly, a $1 million charge against accounts receivable for a company of Gupta's size is material.

Plaintiffs have also adequately alleged scienter with respect to these accounting entries. Plaintiffs allege that defendants' motive for both acts of alleged fraud was to inflate the value of Gupta stock in order to sell Gupta securities for personal or corporate profit. In support of this claim, plaintiffs point to defendants' stock sales during the class period. Plaintiffs demonstrate that the six individual Gupta defendants sold stock for total proceeds of approximately $4.2 million; the remaining defendants realized total proceeds of approximately $10 million on their sales of Gupta stock.

Defendants counter that they sold only a small fraction of their holdings. Relying on *In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407 (9th Cir.1994), and *In re Apple Comput-*

---

**2.** Plaintiffs contend that Gupta's failure to increase reserves in the fourth quarter of 1993 in anticipation of the possible bankruptcy of its German distributor is actionable accounting fraud. The Court holds that only plaintiffs' claims relating to the first quarter of 1994 are actionable as pled. Plaintiffs have not alleged that Gupta had to write off any accounts receivable relating to the fourth quarter of 1993. All that plaintiffs have alleged thus far is that Gupta was aware of a potentially adverse financial event, failed to set aside adequate reserves to cover the possibility, and was lucky enough not to suffer any financial consequences during the fourth quarter of 1993. These allegations do not rise to the level of fraud.

**3.** Defendants also maintain that these allegations are not actionable because plaintiffs did not rely on them. This argument is addressed below.

er Sec. Litig., 886 F.2d 1109 (9th Cir.1989), cert. denied, 496 U.S. 943, 110 S.Ct. 3229, 110 L.Ed.2d 676 (1990), defendants assert that sales of such small holdings do not create an inference of scienter. Defendants misinterpret both cases. Both *Worlds of Wonder* and *Apple* involved motions for summary judgment. As defendants note, the *Apple* court found that defendants' sale of 8% of their holdings, valued at $84 million, was not probative of bad faith or scienter. In *Apple,* however, the court noted that the defendants had sold fewer shares in the ten-month class period than they had sold during the ten preceding months. Moreover, the court found that several of the defendants gave credible and wholly innocent explanations for the stock sales during deposition testimony, and these explanations were uncontradicted. *Id.* at 1117. Similarly, in *Worlds of Wonder* the Ninth Circuit declined to infer scienter from sales of a "minuscule fraction" of defendants' shares, stating that "after years of discovery, Plaintiffs cannot point to any bit of information traded on by these defendants that was not already known to the market." *Worlds of Wonder,* 35 F.3d at 1427 (quoting district court opinion, *In re Worlds of Wonder Sec. Litig.,* 814 F.Supp. 850, 871–72 (N.D.Cal.1993)). Thus, the court declined to find an inference of scienter in part because plaintiffs were entirely unable, even after discovery, to make any specific allegations against defendants.

■■■ Defendants are correct, however, that plaintiffs third allegation, relating to the allegedly insufficient reserves for returns of product, lacks both scienter and materiality. Plaintiffs do not estimate the amount by which Gupta's reserves were insufficiently funded to compensate for the expected return of product. Without some indication that the amount involved is more than trivial, plaintiffs have not successfully alleged materiality or scienter. Accordingly, this allegation is dismissed with leave to amend.

**C. Statements Concerning Gupta's Products, General Market Conditions, and Gupta's Competition**

¶¶ 34–35, 36–37, 39–40, 44–45, 46–50, 51–53, 54, 55, 56, 57–58, 60–66, 67–68, 69–70, 71, 73, 77, 90(j), 90(k), 90(*l* ), 90(n), 90(p)

Plaintiffs make numerous allegations that defendants failed to reveal that Gupta's products did not stand up well when analyzed against the products of competitors such as Oracle, Powersoft, and Sybase. For example

¶ 35: [D]efendants knew that Gupta did not have the competitive lead for its products that defendants represented, that Gupta's competitive position was being diminished due to the increasing success of Gupta's competitors, . . .

¶ 90(j): [Defendants knew that] Gupta's newest SQL Windows software products did not have unique features not possessed by competitive products that justified premium pricing for Gupta's products and, in fact, Gupta was granting price discounts, extended payment terms and other special sales incentives to move product[.]

These claims are non-actionable.

The Ninth Circuit recently reaffirmed the established principle that federal securities laws "do not ordain that the issuer of a security compare itself in myriad ways to its competitors, whether favorably or unfavorably." *In re Worlds of Wonder Sec. Litig.,* 35 F.3d 1407, 1419 (9th Cir.1994) (quoting *In re Donald J. Trump Casino Sec. Litig.,* 7 F.3d 357, 375 (3d Cir.1993)). Other courts have reached similar conclusions. *See e.g., In re Convergent Technologies Sec. Litig.,* 948 F.2d 507, 513 (9th Cir.1991) (finding no duty to disclose information the market clearly understood); *In re VeriFone Sec. Litig.,* 784 F.Supp. 1471, 1481–82 (N.D.Cal. 1992), *aff'd,* 11 F.3d 865 (9th Cir.1993) (no duty to disclose general information concerning the market within which defendant corporation competes); *In re Apple Computer Sec. Litig.,* 886 F.2d 1109, 1119 (9th Cir. 1989), *cert. denied,* 496 U.S. 943, 110 S.Ct. 3229, 110 L.Ed.2d 676 (1990) (no duty to disclose information about industry which is "well understood").

■■■ Under established precedent, Gupta had no duty to alert the market to information that was already available to the market, such as the relative merits of Gupta's products when compared to competing products. Moreover, the presence of the information in

the market serves as a defense to plaintiffs' fraud-on-the-market theory of securities violations. *Apple,* 886 F.2d at 1114 ("[p]rovided that they have credibly entered the market through other means, the facts allegedly omitted by the defendant would already be reflected in the stock's price; the mechanism through which the market discovered the facts in question is not crucial.").

Plaintiffs' attempt to distinguish their allegations from this type of meritless claim fails. Interpreting plaintiffs' claims as broadly as possible, the Court finds that plaintiffs allege (1) that defendants knew information about the quality of their own products which the market did not know, and which therefore made it impossible for the market to accurately compare Gupta's products to those of the company's competitors; and (2) that Gupta affirmatively mislead the market by suggesting that Gupta's SQL Windows product could be sold at a premium price, when the company knew that in fact SQL Windows was not a sufficiently strong competitor in its market to support premium pricing.

With respect to the first contention, the stock market was plainly aware of the merits of the versions of Gupta products available for purchase relative to the offerings of competitors. Accordingly, the only attributes about which the company could have misled the market are those attributes, such as features and functionality, to be added to Gupta's products in the future. Plaintiffs do not, however, allege that defendants promised certain specific functionality or features. Rather, plaintiffs assert that Gupta touted the "unique features" of its products (¶ 44), and boasted that the company "had added more important features to its SQL Windows product" (¶ 51). Aside from the fact that these types of statements are nonactionable "puffing," the Court rejects plaintiffs' implied assertion that the market could have been misled by these bald expressions of the superiority of Gupta's products over those of Gupta's competitors.

Plaintiffs' second contention is equally unsuccessful. Plaintiffs claim that defendants misled the market by suggesting that SQL Windows could be sold at a higher price than what defendants knew the market would truly bear. In support of this allegation, plaintiffs point to the fact that Gupta raised the price on SQL Windows in December of 1993, stated that the higher price was holding in both January and June of 1994, and then expressed surprise at having to lower the product's price in July of 1994.

To allege actionable fraud with respect to the price increase, plaintiffs' allegations must support an inference that at the time defendants said they were going to raise prices and that the higher prices were holding, defendants knew, or were reckless in not knowing, that the market would not bear the higher price. Given the rapid rate of change in the software industry, and the fact that the market did bear the price increase for some period of time, these events cannot be attributed to an attempt to fraudulently influence the stock market.

As a corollary to this argument, plaintiffs suggest that there is something underhanded and deceitful about Gupta allegedly entering into certain unspecified discount pricing and extended payment arrangements. The Court disagrees. Plaintiffs have not alleged the exact nature of these alleged "arrangements," except to claim that they were necessary to "move product." Without more, plaintiffs have not alleged that Gupta did anything other than, for example, offer bulk discounts to large distributors and other special terms which are common across a number of industries. Plaintiffs do not allege that the pricing arrangements, whatever they might be, conflict with industry standards. As such, the Court holds that the allegations are insufficiently pled to support a cognizable claim. *See e.g., In re Apple Computer Sec. Litig.,* 886 F.2d 1109, 1119 (9th Cir.1989), *cert. denied,* 496 U.S. 943, 110 S.Ct. 3229, 110 L.Ed.2d 676 (1990) (no duty to disclose practices which the investment community clearly understood).

Having found no reasonable basis for plaintiffs' claims concerning (1) Gupta's alleged failure to disclose the relative merits of Gupta's products and those of the company's competitors, and (2) Gupta's pricing arrangements, the Court dismisses these alle-

gations with prejudice. Normally, the right to amend is liberally granted. Where the Court believes that the pleadings cannot be amended to state a cognizable claim, however, there is no reason to grant such leave.

### D. Alleged Misleading Statements and Omissions Accompanying Reports of Historical Data

Defendants assert that many of plaintiffs' allegations are barred by *In re VeriFone Sec. Litig.*, 11 F.3d 865 (9th Cir.1993). The gravamen of *VeriFone* is that allegedly misleading statements, including projections, that accompany the release of accurate historical data are not actionable under federal securities laws. *Id.* The *VeriFone* court reasoned that once the market has accurate historical data, investors can make their own informed decisions concerning a company's likely future performance. *Id.*

 Defendants' reliance on *VeriFone* is misplaced. *VeriFone* applies only to circumstances where the historical data released is accurate. The rationale which animates *VeriFone* has no force where the historical information released is itself false and misleading. As plaintiffs allege that the financial information released by defendants during the third and fourth quarters of 1993 and the first quarter of 1994 is materially inaccurate, *VeriFone* does not presently require dismissal of any of plaintiffs' claims. Some of plaintiffs' allegations may be subject to such dismissal at a later date, however, if plaintiffs' second amended complaint does not state cognizable claims for accounting fraud in the third and fourth quarters of 1993.

### E. Projections

¶¶ 34, 44, 47, 51, 54

 In the Ninth Circuit, projections and expressions of optimism about the future may be actionable under federal securities laws if the statements are materially misleading. *In re Apple Computer Sec. Litig.*, 886 F.2d 1109, 1113 (9th Cir.1989), *cert. denied*, 496 U.S. 943, 110 S.Ct. 3229, 110 L.Ed.2d 676 (1990). A projection contains "at least three implicit factual assertions: (1) that the state-

ment is genuinely believed, (2) that there is a reasonable basis for that belief, and (3) that the speaker is not aware of any undisclosed facts tending to seriously undermine the accuracy of the statement." *Id.* For a projection to be actionable, at least one of these implied assertions must be inaccurate. *Id;* *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 501 (9th Cir.1992); *In re VeriFone Sec. Litig.*, 11 F.3d 865, 870 (9th Cir.1993). The mere fact that the prediction turns out to be wrong, however, does not make the statement false when made. *VeriFone*, 11 F.3d at 871, quoting *Marx v. Computer Sciences Corp.*, 507 F.2d 485, 489–90 (9th Cir.1974).

 The central inquiry in whether a projection is misleading is whether the speaker had "reason to believe" that the projection might not come true. *Marx*, 507 F.2d at 490. Under this rule, forecasters are required to disclose any fact which is "necessary in order to make the statements made ... not misleading" or "necessary to allay any misleading impression" which the statements might give. *Id.* at 492. As interpreted in *Apple*, a projection is only actionably misleading if the statement is material and there is no reasonable basis for the prediction. *In re Apple Computer Sec. Litig.*, 886 F.2d 1109, 1113, 1116–17 (9th Cir.1989), *cert. denied*, 496 U.S. 943, 110 S.Ct. 3229, 110 L.Ed.2d 676 (1990). *See also, Hanon v. Dataproducts Corp.*, 976 F.2d 497, 501 (9th Cir. 1992); *In re VeriFone Sec. Litig.*, 784 F.Supp. 1471, 1486 (N.D.Cal.1992), *aff'd* 11 F.3d 865 (9th Cir.1993).

Plaintiffs allege that several projections made by defendants during the class period are false and misleading for a variety of reasons, including alleged accounting fraud and the failure of defendants to reveal information concerning the competitive position of Gupta's products. These projections include: (1) a September 13, 1993, statement by Umang Gupta in which he made a qualified statement that "15 percent [earnings] is certainly achievable" (¶ 34); (2) a December 14, 1993, statement by Umang Gupta endorsing Wall Street earnings estimates for 1993 and saying that estimates of $85 million in sales and 70 cents per share earnings for 1994 were "within reason" (¶ 44); (3) a January

17, 1994, statement by management that it was "confident that 60% revenue growth was in comfortable reach for 1994" (¶ 47); (4) a January 28, 1994, forecast that Gupta would post revenues of $85–90 million in 1994 with earnings of approximately 65–70 cents per share (¶ 51); and (5) a January 31, 1994, forecast of approximately 70% earnings growth for the year (¶ 54).

Defendants assert that none of the five projections is actionable. According to defendants, each statement is either not material or plaintiffs have failed to sufficiently plead lack of a reasonable basis.

■■■ Defendants maintain that neither of the 1993 projections is actionable because the statements are insufficiently specific to be material misstatements. The Court agrees with defendants with respect to Umang Gupta's statement of September 13, 1993. In his statement of September 13, 1993, Mr. Gupta used sufficient cautionary language that a reasonable investor would have understood that Mr. Gupta considered his forecast contingent: "I don't like to project specific percent earnings numbers. However, I think 15 percent is the kind of earnings growth that is certainly achievable, given the total revenue growth of our company as it has been in the past few years. If similar revenue growth occurred in the future, clearly such earnings growth would be achievable." (¶ 34).

■■■ In his interview of December 14, 1993, Umang Gupta stated that "he was comfortable with Wall Street estimates that the company [would] earn about 41 cents a share on sales of about $57 million in 1993.... [Mr. Gupta] added that 1994 estimates of $85 million in sales and 70 cents a share were within reason." (¶ 44). Mr. Gupta's endorsement of the Wall Street estimate for Gupta's 1993 earnings is sufficiently specific to be actionable. Because plaintiff's are alleging that Gupta's fourth quarter 1993 and year-end financial statements are fraudulent, defendants' claim that Gupta's 1993 year-end statement shows the estimate to have been correct is unavailing. Defendants' Exh. D at 2. Mr. Gupta's estimate for 1994 stating that particular earnings are "within reason," however, does not constitute a sufficiently firm estimate of future earnings to be actionable

as securities fraud. That an outcome is "within reason" does not necessarily mean that the outcome is likely, or even probable; "within reason" may mean no more than "not out of the question." The Court finds that reasonable investors would not rely on an estimate of future earnings expressed in such qualified language, particularly where the speaker is the president of the company involved.

■■■ The January 1994 projections, by contrast, are sufficiently specific. Defendants assert, however, that these projections are non-actionable because plaintiffs have not sufficiently pled that defendants were aware as early as January 1994 that defendants' forecasts for the year lacked any reasonable basis. Defendants are mistaken. Plaintiffs have alleged accounting fraud. If plaintiffs are able to present evidence of material fraudulent recordkeeping in late 1993 and early 1994, that evidence may also suggest that these projections lacked a reasonable basis.

Because the success of the allegations based on the December 14, 1993 estimate of 1993 earnings and the January 1994 projections is contingent on whether plaintiffs are able to amend their allegations of accounting fraud to a state cognizable claim, the claims relating to these projections are dismissed with leave to amend.

### F. Statements of General Optimism and Puffing

¶¶ 34, 39, 44, 46, 51, 55, 57, 60, 67

■■■ Statements of belief and optimism, like projections, may be actionable under federal securities law if they lack a reasonable basis. *In re Apple Computer Sec. Litig.*, 886 F.2d 1109, 1113 (9th Cir.1989), *cert. denied,* 496 U.S. 943, 110 S.Ct. 3229, 110 L.Ed.2d 676 (1990); *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 501 (9th Cir.1992); *In re VeriFone Sec. Litig.*, 11 F.3d 865, 870 (9th Cir.1993). Numerous courts have held, however, that general statements of optimism about the future and "puffing" about a company or product are not actionable. *In re Syntex Corp. Sec. Litig.*, 855 F.Supp. 1086, 1095 (N.D.Cal.1994); *Alfus v. Pyramid Technolo-*

**1236**

*gy Corp.,* 745 F.Supp. 1511, 1519 (N.D.Cal. 1990); *Raab v. General Physics Corp.,* 4 F.3d 286, 289–90 (4th Cir.1993). "Professional investors, and most amateur investors as well, know how to devalue the optimism of corporate executives, who have a personal stake in the future success of the Company." *In re VeriFone Sec. Litig.,* 784 F.Supp. 1471, 1481 (N.D.Cal.1992), *aff'd,* 11 F.3d 865 (9th Cir. 1993) (citing *Wielgos v. Commonwealth Edison Co.,* 892 F.2d 509, 515 (7th Cir.1989)).

*Raab v. General Physics Corp.,* 4 F.3d 286 (4th Cir.1993), rejected as non-actionable statements such as "[defendant] is poised to carry the growth and success of 1991 well into the future," and that the market for defendant's services had "an expected annual growth rate of 10% to 30% over the next several years." *Id.* at 289. In this district, courts have found similar statements non-actionable. For example, in *Rogal v. Costello,* Fed.Sec.L.Rep. (CCH) ¶ 97,245, 1992 WL 426467 (N.D.Cal.1992), the court considered defendants' expression of a "more positive outlook for the June quarter" and "bullish" feelings about the remainder of the year too vague to be actionable. *Id.* at 95,093–94. Similarly, in *In re Software Publishing Sec. Litig.,* Fed.Sec.L.Rep. (CCH) ¶ 98,094, 1994 WL 261365 (N.D.Cal.1994), the court rejected as mere expressions of optimism the following statements: "We will continue to manage expenses and headcount levels with an eye on both short term operating realities and our longer term objectives;" "We believe we have the combination of people and products in place to be successful in this exciting period for the desktop software industry." *Id.* at 98,757. Likewise, in *In re Ross Sys. Sec. Litig.,* Fed.Sec.L.Rep. (CCH) ¶ 98,363, 1994 WL 583114 (N.D.Cal.1994), the court dismissed as non-actionable the following statements: "We are pleased with the current level of prospective sales, which is particularly high ..."; "Acceptance of these products in the U.S. has exceeded our expectations.... our rapidly growing prospect base reflects significant opportunity in this market." *Id.* at 90,497.

Defendants challenge parts of nine paragraphs in plaintiffs' complaint on the grounds that the allegedly fraudulent statements are nothing more than optimistic statements about Gupta's products or possible future similar to those rejected by other courts in this district. For example,

¶ 34: "[From our perspective,] business couldn't be better ... [i]t's a great time for a company like ours ... we already have a sizable lead over our competition, and we hope to maintain that.... [We have] a very senior and seasoned management team ... and therefore we have an acute understanding of the market factors that drive our business, and what it takes to succeed in it[.]"

¶ 44: "Mr. Gupta said that the company's ability to raise prices reflects unique features of its products[.]"

¶ 57: "In most respects, we spent 1993 building the kind of organization required to manage sustained growth.... I am happy to say that as a result, we now have sales, marketing and customer service expertise to match our traditional technical prowess."; "With the management team necessary to develop and implement a strategic marketing program now firmly in place, we are launching a series of major marketing initiatives to improve brand recognition for Gupta and its products."

■ The Court agrees with defendants that most of the challenged statements are non-actionable. The Court holds, however, that parts of three of the statements are sufficiently concrete to be actionable.

¶ 39: "[o]ur increased revenue levels reflected strong new product sales"; "corporate sales also continued to increase ... reflecting strong demand ..."

¶ 46: "What's especially pleasing about 1993 is that we not only grew financially but were able to expand, build and strengthen the company at the same time[.]"

¶ 57: "The company's financial performance in 1993 offers some evidence of our potential."

The statement in paragraph 39 is not a statement expressing optimism about the future; rather, it offers an explanation for past success. Defendants maintain that this statement, along with some of the other "op-

timistic" statements defendants challenge, is non-actionable under *In re VeriFone Sec. Litig.*, 11 F.3d 865 (9th Cir.1993). This is a misreading of *VeriFone*. *VeriFone* makes optimistic statements and projections that accompany the disclosure of accurate historical facts non-actionable. In this case, the challenged statements were made in Gupta's third quarter 1993 report to shareholders. Unlike the situation in *VeriFone*, however, plaintiffs dispute the accuracy of the financial figures presented in the report. The statement in paragraph 46 was made in a January 17, 1994, press release announcing Gupta's fourth quarter and year end financial results for 1993. The statement in paragraph 57 appears in Gupta's 1993 Annual Report, issued in March 1994. Both statements focus attention on Gupta's past financial results.

If plaintiffs are able to amend their complaint to allege actionable accounting fraud in the third and fourth quarters of 1993, then statements which optimistically interpret numbers which defendants may have known were false will be actionable. Accordingly, the allegations stemming from the statements set forth above are dismissed with leave to amend; plaintiffs may restate these allegations if they are able to allege accounting fraud with more specificity.

### G. Statements about Gupta Made by Analysts

¶¶ 38, 50, 53, 54, 55, 56, 61, 77

Plaintiffs assert that defendants are liable for certain allegedly false and misleading reports issued by securities analysts during the class period. To hold corporate defendants liable for the statements of third party analysts, plaintiffs must allege facts suggesting that the corporation "sufficiently entangled itself with the analysts' forecasts to render those predictions 'attributable to it.'" *Elkind v. Liggett & Myers, Inc.*, 635 F.2d 156, 163 (2d Cir.1980). The "entanglement" theory requires that a complaint allege that defendants placed their imprimatur on analyst reports and projections. *Alfus v. Pyramid Technology Corp.*, 764 F.Supp. 598, 603 (N.D.Cal.1991).

Courts in this district have held that in order to plead entanglement with the specificity required by Rule 9(b), plaintiffs must identify at least the time, place, and nature of the alleged entanglement activity. *See e.g., In re VeriFone Sec. Litig.*, 784 F.Supp. 1471, 1487 (N.D.Cal.1992), *aff'd* 11 F.3d 865 (9th Cir.1993); *In re Caere Corporate Sec. Litig.*, 837 F.Supp. 1054, 1059 (N.D.Cal.1993). It is not sufficient to allege that defendants provided analysts with the information on which the analysts' reports were based. Plaintiffs must also allege that defendants had some measure of control over the content of the final report or projection issued by the analysts. *Caere*, 837 F.Supp. at 1059; *VeriFone*, 784 F.Supp. at 1486; *In re Software Publishing Sec. Litig.*, Fed.Sec. L.Rep. (CCH) ¶ 98,094, 98,762, 1994 WL 261365 (N.D.Cal.1994); *In re Syntex Corp. Sec. Litig.*, 855 F.Supp. 1086, 1097 (N.D.Cal. 1994). Analysts might quote corporate spokespersons out of context or inaccurately interpret remarks made by corporate insiders. In addition, analysts can be expected to bring to bear other knowledge and opinions about the defendants' industry in writing their reports. Accordingly, corporate defendants can only be held responsible for analysts' reports where the defendants have had some opportunity to review and correct the reports.

Defendants assert that plaintiffs have not pled entanglement with the particularity required by Rule 9(b). Plaintiffs' make detailed allegations that Gupta insiders provided information and guidance to analysts to assist the analysts in creating forecasts for the company. The allegation that defendants reviewed and approved analysts' reports before publication, by contrast, is general. Plaintiffs claim in one paragraph that

> The information about Gupta contained in the various securities analysts' reports published during the Class Period was obtained from or based on information obtained from defendants, as discussed above, and copies of drafts of these reports were provided to defendants and other top Gupta officers before they were released, and those drafts were reviewed and approved by them.... Defendants endorsed these reports, adopted them as their own

and placed their imprimatur on them as well as the projections, forecasts and statements contained therein.

Amended Complaint, ¶ 32.

 Although it is a close question, the Court finds that, for now, plaintiffs have narrowly met their burden. Rule 9(b) requires plaintiffs to plead allegations of fraud with particularity, but plaintiffs are not required to plead facts which are in the exclusive control of the defendants. *Deutsch v. Flannery*, 823 F.2d 1361, 1366 (9th Cir. 1987).[4] Other courts in this district have found allegations of entanglement that were no more detailed than those presented here actionable. *See e.g., Alfus v. Pyramid Technology Corp.*, 764 F.Supp. 598, 603 (N.D.Cal. 1991); *In re VeriFone Sec. Litig.*, 784 F.Supp. 1471, 1486–87 (N.D.Cal.1992), *aff'd* 11 F.3d 865 (9th Cir.1993); *In re Cypress Semiconductor Sec. Litig.*, Fed.Sec.L.Rep. (CCH) ¶ 97,060, 94,698, 1992 WL 394927 (N.D.Cal.1992); *In re RasterOps Corp. Sec. Litig.*, Fed.Sec.L.Rep. (CCH) ¶ 97,790, 97,-849, 1993 WL 476661 (N.D.Cal.1993).

The Court agrees with defendants that pleading requirements for fraud must be sufficiently rigorous to discourage actions by potential plaintiffs whose claims are not meritorious. The requirements must not be so demanding, however, that plaintiffs with valid grievances are unable to survive a motion to dismiss. The vexing aspect of allegations of securities fraud based on statements made by analysts is that it is difficult to balance these two principles. Without clear authority from the Ninth Circuit, the Court is unwilling to strike this balance entirely in favor of defendants. Plaintiffs are cautioned, however, that without more specific information concerning how defendants "adopted" the analyst statements in question, these allegations are unlikely to survive a motion for summary judgment.

 While the statements about Gupta made by analysts are not *per se* non-actionable, individual analyst reports are of course

only actionable to the extent that the underlying statements of management on which they are based are actionable. Thus, if plaintiffs' allegations of accounting fraud relating to a statement made by Gupta are dismissed with leave to amend, then allegations relating to analyst reports based on that statement are also dismissed with leave to amend. Similarly, allegations relating to analyst reports that are based on comments by Gupta management about Gupta's competition, are dismissed with prejudice.

## H. Defendants' "Bespeaks Caution" Defense

 Defendants argue that many of plaintiffs' allegations concerning forward looking statements are barred as a matter of law because the representations in question adequately "bespeak caution." Under the "bespeaks caution" doctrine recently adopted by the Ninth Circuit, projections and other statements of optimism must be read in context. *In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1413–15 (9th Cir.1994). If the document in which the statement is found makes the risks inherent in the investment sufficiently clear, plaintiffs may not premise a securities fraud action on individual statements within the document which are less cautionary. *Id.*

 In the instant case, however, most of the claims which survive defendants' motions to dismiss, either as actionable claims, or with leave to amend, rest on allegations of accounting fraud. Because defendants did not disclose the possibility that they might release fraudulent revenue and earnings reports, the "bespeaks caution" doctrine can not serve to make defendants' financial statements non-actionable for the purposes of these motions to dismiss. If, however, the second amended complaint does not allege accounting fraud with more particularity, some of plaintiffs' claims may be subject to dismissal on the "bespeaks caution" doctrine, as well as any other applicable rule.

---

**4.** The Court respectfully declines to follow the decision in *In re Caere Corporate Sec. Litig.*, 837 F.Supp. 1054 (N.D.Cal.1993), because the Court is unpersuaded by the argument in *Caere* that plaintiffs may turn to securities analysts for the information necessary to plead entanglement with particularity. *Id.* at 1059–60. Without legal compulsion, securities analysts are unlikely to cooperate with plaintiffs' attorneys.

## I. Statements Made After April 25, 1994

Defendants urge the Court to find that plaintiffs' allegations relating to statements made after April 25, 1994, are non-actionable because plaintiffs did not rely on the statements. In support of this position, defendants point to allegations plaintiffs made in their original complaint, filed on May 2, 1994. In the original complaint, plaintiffs state that on April 25, 1994, when Gupta announced its disappointing results for the first quarter of 1994, plaintiffs realized that they could not rely on defendants' characterizations of Gupta's future. Original complaint, ¶¶ 50(q), 50(s). Defendants argue that plaintiffs may not, therefore, assert in their amended complaint that plaintiffs did rely on defendants' post-April 25, 1994 statements.

 Defendants' argument is unpersuasive. Even if the named plaintiffs from the original complaint stopped relying on Gupta's public statements after April 25, 1994, it does not follow that all members of the investing public also stopped relying on the company's representations. This potential divergence of knowledge may raise issues about class composition, but these questions are not before the Court on these motions to dismiss.

## J. Group Published Information

 In the Ninth Circuit, allegations of securities fraud based on claims of allegedly false and misleading statements in "prospectuses, registration statements, annual reports, press releases, or other 'group-published information,'" may rely on a presumption that these statements are the collective work of those individuals within the company with direct involvement in the day-to-day affairs of the company. *Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1440 (9th Cir.1987). Under the group pleading presumption, plaintiffs may satisfy the specificity requirement of Rule 9(b) by pleading the alleged misrepresentations with particularity and indicating the roles of individual defendants in the alleged misrepresentations where possible. *Id.*

Most of plaintiffs' allegations of primary liability against the Gupta executives other than Umang Gupta (the "Gupta defendants"), Novell, Rekhi and Carlisle are premised on the group published presumption of liability. Novell, Rekhi, Carlisle and the Gupta defendants dispute their liability under the doctrine.[5]

### 1. *Gupta Defendants*

The Gupta defendants admit that they qualify as individuals with direct involvement in the day-to-day affairs of Gupta. Accordingly, they do not dispute their liability for the allegedly false and misleading statements contained in Gupta's financial statements, reports to the SEC, and press releases. The Gupta defendants assert, however, that oral statements made by named individuals, unattributed oral statements, and analysts' reports are not group published information for which they may be held liable.

#### a. Oral statements of specific defendants

¶¶ 34, 44, 51, 67, 69, 71, 72, 73, 75

In *In re XOMA Corp. Sec. Litig.*, Fed.Sec. L.Rep. (CCH) ¶ 96,491, 1990 WL 357807 (N.D.Cal.1991), the court held that "by its very nature the group pleading presumption does not apply to oral statements by individual defendants ..." *Id.* at 92,161. The court in *In re Rasterops Corp. Sec. Litig.*, Fed.Sec.L.Rep. (CCH) ¶ 98,231, 1994 WL 374332 (N.D.Cal.1994), reached a similar conclusion:

> Although it is reasonable to presume that misleading information conveyed in prospectuses, registration statements, annual reports, or press releases [is] the collective action[ ] of the officers, it is not reasonable to presume that oral statements by individual defendants are the product of such collective efforts.

*Id.* at 99,602–03. *See also, In re Sunrise Technologies Sec. Litig.*, Fed.Sec.L.Rep. (CCH) ¶ 97,042, 94,585, 1992 WL 359636 (N.D.Cal.1992).

Despite these adverse holdings, plaintiffs nevertheless contend that the Gupta defen-

---

**5.** Although defendant Carlisle filed joint briefs with the Gupta defendants, the Court considers allegations against Carlisle along with allegations against Rekhi, because both are outside directors of Gupta.

dants are liable under the group pleading presumption for all of the allegedly false and misleading statements listed in the complaint, including oral statements made by specific individuals. Plaintiffs do not cite a single case, however, in which the court applied the group published presumption to an oral statement by an identified individual. Instead, plaintiffs rely on cases involving written documents, such as reports to shareholders, SEC filings, and press releases, which are specifically designated as group published in *Wool v. Tandem Computers, Inc.*, 818 F.2d 1433 (9th Cir.1987). *See e.g., In re Thortec Sec. Litig.*, Fed.Sec.L.Rep. (CCH) ¶ 94,330, 1989 WL 67429 (N.D.Cal. 1989) (published financial statements); *Wool v. Tandem Computers, Inc.*, 818 F.2d 1433 (9th Cir.1987) (financial statements and press releases); *Blake v. Dierdorff*, 856 F.2d 1365 (9th Cir.1988) (corporate reports, press releases and offering circulars).

■ Because plaintiffs are unable to cite authority supporting their position that the Gupta defendants are liable under the group pleading presumption for oral statements made by specific individuals, the allegation fails. The Court therefore holds that oral statements attributable to individual defendants are actionable, if at all, against only those defendants.

### b. Analysts' reports

¶¶ 38, 50, 53, 54, 55, 56, 61, 77

The Gupta defendants also maintain that they are not liable for allegedly false and misleading statements printed in analysts' reports, because such reports are not group published information. In support of this position, the Gupta defendants cite *In re Network Equipment Technologies, Inc., Litig.*, 762 F.Supp. 1359 (N.D.Cal.1991). *Network Equipment*'s reasoning, however, is not applicable to this case.[6]

In *Network Equipment*, the court held that plaintiffs had alleged insufficient facts to link the allegedly misleading analysts' reports to defendants. *Smith v. Network Equipment Technologies, Inc.*, Fed.Sec. L.Rep. (CCH) ¶ 95,659, 98,093, 1990 WL 263846 (N.D.Cal.1990); *Network Equipment*, 762 F.Supp. at 1367. The court therefore described the reports as independent, stating that "independently published statements by financial analysts are not 'group published information.'" *Network Equipment*, 762 F.Supp. at 1367. Relying on this analysis, the court in *In re Rasterops Corp. Sec. Litig.*, Fed.Sec.L.Rep. (CCH) ¶ 98,231, 1994 WL 374332 (N.D.Cal.1994), also rejected plaintiffs' contention that "independent" analyst reports could be actionable as group published information: "[P]laintiff[s] have failed to sufficiently link the analysts' reports to the defendant. Therefore, these reports are independent and not subject to the group published doctrine." *Id.* at 99,602.

■ In the instant case, plaintiffs have successfully claimed that Gupta was sufficiently entangled with the allegedly misleading analysts' reports that the company can be held liable for the reports' contents. Consequently, the *Network Equipment* analysis does not apply. In cases where the analyst reports are actionable against the defendant corporation, the central inquiry for determining whether the reports are also actionable as group published information is whether the source of the reports' information is group published information. Thus, analysts' reports based on financial statements and press releases which are actionable against the defendant corporation are also actionable as group published information. By contrast, analyst reports which are based on oral statements by identified individuals are not actionable as group published information, because the underlying oral statements are not group published information. *See Cytryn v. Cook*, Fed.Sec.L.Rep.

---

**6.** The Gupta defendants also cite *Smith v. Network Equipment Technologies, Inc.*, Fed.Sec. L.Rep. (CCH) ¶ 95,659, 1990 WL 263846 (N.D.Cal.1990), and *In re Ross Sys. Sec. Litig.*, Fed.Sec.L.Rep. (CCH) ¶ 98,363, 1994 WL 583114 (N.D.Cal.1994). *Smith* is simply an earlier version of *Network Equipment*. *Ross* quotes one sentence from *Network Equipment* to hold that analysts' reports are not group published information. The Court respectfully declines to follow *Ross* on this issue because *Ross* offers no independent analysis for its decision, and the Court finds *Network Equipment* inapplicable to this matter.

(CCH), ¶ 95,409, 97,016–17, 1990 WL 128233 (N.D.Cal.1990); *In re Keegan Management Co.*, Fed.Sec.L.Rep. (CCH) ¶ 96,275, 91,483, 1991 WL 253003 (N.D.Cal.1991). Following this principle, analysts' reports based on Gupta's third and fourth quarter results are actionable against the Gupta defendants (¶¶ 38 and 50), but the statements made by Umang Gupta and Scott to analysts are not actionable against the Gupta defendants (¶ 53).

Analysts' reports based on information from "Gupta's top management" present a more difficult question, because such reports are not clearly based on either group published information or the statements of specific individuals. In this circumstance, the Court looks to the purpose of the group pleading presumption for guidance. The group pleading presumption is intended to allow plaintiffs to plead allegations of fraud generally where the specific knowledge is in the exclusive control of the defendants. *Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1440 (9th Cir.1987). With this principle in mind, the Court holds that the unattributed analysts' statements are actionable against the Gupta defendants as group published information because plaintiffs have alleged the details which they have available to them during the pleading stage (¶¶ 54, 55, 56, 61, 77).

### 2. *Novell, Rekhi and Carlisle*

Only defendants who are active in the day-to-day management and control of a company may be held liable under the group pleading presumption. *See e.g., Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir.1989); *O'Sullivan v. Trident Microsystems*, Fed.Sec.L.Rep. (CCH) ¶ 98,116, 98,913, 1994 WL 124453 (N.D.Cal. 1994); *In re Syntex Corp. Sec. Litig.*, 855 F.Supp. 1086, 1100 (N.D.Cal.1994); *In re Ross Sys. Sec. Litig.*, Fed.Sec.L.Rep. (CCH) ¶ 98,363, 90,496, 1994 WL 583114 (N.D.Cal. 1994); *In re Sunrise Technologies Sec. Litig.*, Fed.Sec.L.Rep. (CCH) ¶ 97,042, 94,584, 1992 WL 359636 (N.D.Cal.1992). To successfully assert group pleading liability against Novell, Rekhi and Carlisle, therefore, plaintiffs must allege facts suggesting that Novell, Rekhi and Carlisle participated in the day-to-day management of Gupta.

Plaintiffs have alleged that (1) Rekhi signed Gupta's 1993 Annual Report on Form 10–K; (2) Carlisle was a member of the audit and compensation committees of Gupta's Board of Directors; (3) Novell, Rekhi and Carlisle controlled the contents of Gupta's financial reports, press releases and presentations to securities analysts; (4) Novell, Rekhi and Carlisle were given copies of Gupta's financial reports and press releases prior to or shortly after their issuance; and (5) Novell, Rekhi and Carlisle had the ability and opportunity to prevent the issuance of false statements or to cause the statements to be corrected before they were issued.

These claims against Novell, Rekhi and Carlisle are simply conclusory allegations unsupported by assertions of specific day-to-day involvement in the management of Gupta. As such, the allegations are insufficient to bring Rekhi and Carlisle, outside directors, and Novell, a minority shareholder, within the gambit of the group pleading doctrine.

Two courts in this district have held that the mere fact that an outside director signed a group published document does not make the outside director liable for the contents of the document. In *In re Ross Sys. Sec. Litig.*, Fed.Sec.L.Rep. (CCH) ¶ 98,363, 1994 WL 583114 (N.D.Cal.1994), the court held that an outside director was not liable under the group published presumption where plaintiff's only specific allegation against the outside director was that the outside director had signed the defendant company's Form 10–K. *Id.* at 90,496. Similarly, the court in *In re XOMA Corp. Sec. Litig.*, Fed.Sec. L.Rep. (CCH) ¶ 96,491, 1990 WL 357807 (N.D.Cal.1991), found no liability against an outside director who signed a group published document because plaintiffs did not claim that the outside director had helped to prepare the document. *Id.* at 92,160–61.

Mere membership on committees of a corporation's Board of Directors is also insufficient to subject an outside director to liability under a group pleading theory. The court in *In re Syntex Corp. Sec. Litig.*, 855

F.Supp. 1086 (N.D.Cal.1994), found that allegations that an outside director chaired the corporate defendant's finance and trust revenue committees failed to establish the requisite involvement in the corporation's day-to-day affairs. *Id.* at 1100. Similarly, in *Ross Systems,* the court held that the outside directors' membership on the corporate defendant's Board of Directors' audit, compensation and stock option committees was insufficient to establish the prerequisites for group published liability. *Ross Systems,* Fed.Sec. L.Rep. (CCH) ¶ 98,363 at 90,496.

■ Conclusory allegations that an outside director had access to corporate documents likewise do not demonstrate the day-to-day involvement with corporate affairs necessary to establish liability under the group pleading presumption. In *Syntex,* the court dismissed as insufficiently pled allegations strikingly similar to plaintiffs' claims against defendants Novell, Rekhi and Carlisle. The *Syntex* plaintiffs alleged that the outside director had access to the defendant company's financial statements and internal business plans, and received advance notice of the contents of press releases and presentations to securities analysts. *Syntex,* 855 F.Supp. at 1100. The court held that these claims did not allege sufficient day-to-day involvement in the company's affairs to establish group pleading liability. *Id. See also, O'Sullivan v. Trident Microsystems,* Fed.Sec.L.Rep. (CCH) ¶ 98,116, 98,913, 1994 WL 124453 (N.D.Cal.1994) (summary allegations that outside directors "controlled the contents and received copies of the annual reports, press releases and presentations to securities analysts" insufficient to establish required day-to-day control); *Ross Systems,* Fed.Sec.L.Rep. (CCH) ¶ 98,363 at 90,496 (allegations that outside directors had access to non-public information concerning defendant's finances, and controlled contents of defendant's press releases and reports, insufficient to establish day-to-day control).

Plaintiffs allegations against defendants Novell, Rekhi and Carlisle are indistinguishable from allegations which courts in this district have routinely found insufficient to establish the day-to-day control necessary to support a finding of group pleading liability.

Accordingly, plaintiffs allegations of primary liability against Novell, Rekhi and Carlisle are dismissed with leave to amend.

## III. Allegations of Secondary Liability

### A. Control Person Liability

■ Section 20(a) of the 1934 Act imposes joint and several liability on any "person who, directly or indirectly, controls any person liable" for securities fraud under the Act, "unless the controlling person acted in good faith and did not directly or indirectly induce" the violations. The SEC defines "control" as "the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through ownership of voting securities, by contract, or otherwise." 17 C.F.R. § 230.405. Plaintiffs need not show day-to-day control of the defendant company in order to establish control person liability. *O'Sullivan v. Trident Microsystems,* Fed. Sec.L.Rep. (CCH) ¶ 98,116, 98,917, 1994 WL 124453 (N.D.Cal.1994); *In re XOMA Corp. Sec. Litig.,* Fed.Sec.L.Rep. (CCH) ¶ 96,491, 92,163, 1990 WL 357807 (N.D.Cal.1991). Plaintiffs must, however, demonstrate "actual power or influence over" the company. *Gray v. First Winthrop Corp.,* 776 F.Supp. 504, 510 (N.D.Cal.1991). Following these principles, plaintiffs must assert that the individual defendants had the power to control or influence Gupta in order to state a cognizable claim under Section 20(a). Plaintiffs allege control person liability against all defendants except Gupta.

#### 1. *Gupta Defendants*

■ The Gupta defendants admit that they are liable as control persons to the same extent that they are liable under the group published doctrine. As the Court has found that the Gupta defendants may be held liable under the group pleading presumption for some of the actionable alleged misrepresentations, the Gupta defendants may also therefore be held liable for those statements under a theory of control person liability.

■ The Gupta defendants may not, however, be held liable for oral statements attributable to identified individuals or the ana-

lyst reports based on such statements under a theory of control person liability. As discussed above, statements attributable to specific individuals are presumed to be the actions of those individuals only. Accordingly, they are not actionable against other defendants under any theory of liability.

### 2. *Novell, Rekhi and Carlisle*

■ To successfully allege that Novell, Rekhi and Carlisle are controlling persons within the meaning of Section 20(a), plaintiffs must allege facts demonstrating that Novell, Rekhi and Carlisle "had actual power or influence over" Gupta. *Gray v. First Winthrop Corp.*, 776 F.Supp. 504, 510 (N.D.Cal. 1991). Status alone is ordinarily insufficient to establish control person liability. *Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1441 (9th Cir.1987). Similarly, "[m]ere titles are not adequate indicators of control authority." *Wanetick v. Mel's of Modesto, Inc.*, 811 F.Supp. 1402, 1407 (N.D.Cal.1992).

In support of their claim that Novell, Rekhi and Carlisle are control persons within the meaning of Section 20(a), plaintiffs allege the same elements of control that they rely on for their allegations of group pleading liability. For example, plaintiffs assert that Novell, Rekhi and Carlisle controlled the contents of Gupta's financial reports and press releases, and that Novell, Rekhi and Carlisle could have prevented the issuance of false statements. In addition, plaintiffs allege that Novell was able to control Gupta because Novell owned 8.7% of Gupta's stock.

■ While plaintiffs are correct that allegations of control person liability must be "construed liberally and flexibly," *In re Thortec Sec. Litig.*, Fed.Sec.L.Rep. (CCH) ¶ 94,330, 92,159, 1989 WL 67429 (N.D.Cal.1989), the allegations against Novell, Rekhi and Carlisle are insufficient to establish control person liability. Plaintiffs' claims against these defendants are conclusory; plaintiffs allege no facts to support their allegations of control.

■ The status of Rekhi and Carlisle as outside directors is insufficient to make them control persons. Directors are not automatically liable as controlling persons. *Burgess*

*v. Premier Corp.*, 727 F.2d 826, 832 (9th Cir.1984) (citations omitted). While an individual's status as a director is "sort of a red light" of control, *Arthur Children's Trust v. Keim*, 994 F.2d 1390, 1397 (9th Cir.1993), the status does not create a presumption of control. *See e.g., In re XOMA Corp. Sec. Litig.*, Fed.Sec.L.Rep. (CCH) ¶ 96,491, 92,163, 1990 WL 357807 (N.D.Cal.1991). "There must be some showing of actual participation in the corporation's operation or some influence before the consequences of control may be imposed." *Burgess v. Premier Corp.*, 727 F.2d 826, 832 (9th Cir.1984).

■ Similarly, Novell's position as a minority shareholder of Gupta with an agent on the board does not establish control person liability. *O'Sullivan v. Trident Microsystems*, Fed.Sec.L.Rep. (CCH) ¶ 98,116, 98,917, 1994 WL 124453 (N.D.Cal.1994) (ownership of 9.5% of defendant's stock coupled with agent on the board is insufficient to allege control person liability).

■ Because plaintiffs have not alleged any facts suggesting that either Novell, Rekhi or Carlisle exerted real control or influence over Gupta, plaintiffs' control person allegations against Novell, Rekhi and Carlisle are dismissed with leave to amend.

### B. Conspiracy Claims

■ Plaintiffs also allege secondary liability against all defendants as conspirators in a common plan and scheme to defraud the investing public (¶ 20). Plaintiffs' conspiracy claims, however, are barred by *Central Bank, N.A. v. First Interstate Bank, N.A.*, —— U.S. ——, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994).

In *Central Bank*, the Supreme Court addressed the question of whether private civil liability under Section 10(b) extends to persons who aid and abet a violator of the section. *Id.* at ——, 114 S.Ct. at 1443. Relying heavily on the statutory text, the Court concluded that Section 10(b) does not include an action for aiding and abetting liability. *Id.* at —— – ——, 114 S.Ct. at 1446-48. "Congress knew how to impose aiding and abetting liability when it chose to do so. If ... Congress intended to impose aiding and

abetting liability, we presume it would have used the words 'aid' and 'abet' in the statutory text. But it did not." *Id.* at ——, 114 S.Ct. at 1448 (internal citations omitted).

The Supreme Court's reasoning is equally applicable to conspiracy liability. The text of Section 10(b) does not refer to any form of conspiracy liability. Under *Central Bank,* therefore, plaintiffs may not maintain a private action for conspiracy to violate Section 10(b).

Plaintiffs' assertion that the Supreme Court has historically treated aiding and abetting liability and conspiracy liability differently does not change this analysis. If the Court had relied on the nature of aiding and abetting liability to decide *Central Bank,* arguments distinguishing conspiracy liability from aiding and abetting liability would have some force. Because the Court based its holding on the statutory text, however, these distinctions are immaterial.

Plaintiffs' attempt to find a reference to conspiracy liability in the text of Section 10(b) is equally unavailing. Highlighting the language in Section 10(b) that makes it unlawful to commit securities fraud "directly or indirectly," plaintiffs assert that Congress intended the section to provide a private action for conspiracy. The Supreme Court rejected this argument with reference to aiding and abetting liability in *Central Bank. Id.* at —— —— ——, 114 S.Ct. at 1447–48. Plaintiffs give no reason why the argument should be more persuasive when applied to conspiracy liability.

Similarly, plaintiffs' assertion that the text of Rule 10b–5 creates an implied private action for conspiracy liability, even if one does not exist in the text of Section 10(b), is without merit. In support of their argument, plaintiffs point to the language in Rule 10b–5 making it unlawful "for any person … [t]o employ any device, *scheme,* or artifice to defraud" (emphasis added). A scheme need not refer to a conspiracy, however. One person can scheme alone to break all manner of laws, including federal securities laws. Indeed, the reference to "any person" in the text of the rule suggests that Congress contemplated the possibility that one person would scheme to defraud the investing public.

■ The Court is unpersuaded by plaintiffs' attempts to avoid application of *Central Bank* by distinguishing conspiracy liability from aiding and abetting liability. Following *Central Bank,* there is no private action for conspiracy under Section 10(b). Accordingly, plaintiffs allegations of conspiracy against all defendants are dismissed with prejudice.

## IV. Insider Trading Allegations

The Insider Trading and Securities Fraud Enforcement Act, Section 20A of the 1934 Act, provides that:

> Any person who violates any provision of this chapter or the rules or regulations thereunder by purchasing or selling a security while in possession of material, non-public information shall be liable … to any person who, contemporaneously with the purchase or sale of securities that is the subject of such violation, has purchased … or sold … securities of the same class.

15 U.S.C. § 78t–1 (as amended).

The complaint alleges that all defendants violated Section 20A's prohibition on insider trading. In their opposition to defendants' motions to dismiss, however, plaintiffs' withdraw all but one of their allegations of insider trading, apparently because they cannot demonstrate contemporaneous purchases and sales.

■ Plaintiffs continue to pursue their allegation against defendant Scott. Scott allegedly sold 10,000 shares of Gupta stock on February 9, 1994 at $30.38 per share. Plaintiff Jafar Hooman purchased 2,000 Gupta shares on the same day, for $30.25 per share. Defendants concede that the question of whether these transactions were contemporaneous for the purposes of the insider trader laws cannot be resolved on a motion to dismiss. The allegation against Scott is therefore actionable.

Plaintiffs assert the right to renew their claims of insider trading against the other defendants in the future. Accordingly, plaintiffs' allegations of insider trading against all

defendants except Scott are dismissed with leave to amend.

### Conclusion

For the foregoing reasons, the Court orders as follows:

1. With the exception of the allegations relating to (1) inadequate reserves in the first quarter of 1994 to cover the possibility that one of Gupta's main distributors would file for bankruptcy; and (2) improperly booked sales amounting to $1.1 million during the first quarter of 1994, plaintiffs' allegations of accounting fraud are **dismissed with leave to amend.**

2. Plaintiffs' allegations concerning Gupta's products, general market conditions, and Gupta's competition are **dismissed with prejudice.**

3. Plaintiffs' allegations relating to the projections made in ¶ 34 and the projections in ¶ 44 concerning 1994 are **dismissed with prejudice.** Plaintiffs' allegations relating to the projections made in ¶¶ 47, 51, and 54, and the projections concerning 1993 in ¶ 44, are actionable to the extent that the underlying allegations, such as claims of accounting fraud, are actionable.

4. Plaintiffs' allegations concerning statements of general optimism and puffing in ¶¶ 34, 44, 51, 55, 60, and 67 are **dismissed with prejudice.** Plaintiffs' allegations concerning ¶¶ 39, 46, 57 are **dismissed with prejudice** in part, and actionable in part to the extent that the underlying allegations, such as claims of accounting fraud, are actionable.

5. Plaintiffs' allegations concerning statements made by securities analysts are actionable to the same extent as the statements by management on which the analysts' reports are based.

6. Plaintiffs' allegations relating to statements made after April 25, 1994, are actionable to the extent that the underlying allegations, such as claims of accounting fraud, are actionable.

7. Plaintiffs' allegations relating to the statements made in ¶¶ 34, 44, 51, 67, 69, 71, 72, 73, and 75 are actionable, if at all, against only the specific defendants who made the statements. With respect to all other defendants, these allegations are **dismissed with prejudice.**

8. Plaintiffs' allegations relating to the analysts' reports referred to in ¶¶ 38, 50, 54, 55, 56, 61, 77 are actionable against the Gupta defendants. The allegation relating to the analyst report in ¶ 53 is actionable only against defendants Umang Gupta and Scott.

9. Plaintiffs' allegations of primary liability premised on the group pleading presumption against Novell, Rekhi and Carlisle are **dismissed with leave to amend.**

10. Plaintiffs' allegations of control person liability against the Gupta defendants are actionable to the same extent as plaintiffs' allegations of group pleading against the Gupta defendants.

11. Plaintiffs' allegations of control person liability against Novell, Rekhi and Carlisle are **dismissed with leave to amend.**

12. Plaintiffs' allegations of conspiracy liability are **dismissed with prejudice.**

13. Plaintiffs' allegation of insider trading against defendant Scott is actionable; plaintiffs' other allegations of insider trading are **dismissed with leave to amend.**

14. Plaintiffs' motion to strike is **denied** as moot.

15. Plaintiffs shall serve and file their second amended complaint by **January 13, 1995.** Plaintiffs are advised that, absent extraordinary circumstances, the Court will not grant leave to file a third amended complaint.

16. If defendants believe that the second amended complaint does not cure the deficiencies outlined in this Order, defendants may renew their motions to dismiss on the same papers, updated to reflect the appropriate paragraph references to the amended complaint. Defendants may also add new defenses or objections, if appropriate.

SO ORDERED.