**In re SECURE COMPUTING CORP. SECURITIES LITIGATION.**

This Document Relates to All Actions.

No. C 99–01927 CW.

United States District Court,
N.D. California.

June 14, 2000.

Alan Schulman, Darren J. Robbins, David C. Walton, Milberg Weiss Bershad Hynes & Lerach LLP, San Diego, CA, Robert J. Dyer, III, Jeffrey A. Berens, Dyer & Shuman LLP, Denver, CO, Dyer Donnelly, Denver, CO, Reed R. Kathrein, William S. Lerach, Milberg Weiss Bershad Hynes & Lerach LLP, San Francisco, CA, for Myron Goldstein, William Preiner, plaintiffs.

Jules Brody, Stull Stull & Brody, New York City, Michael D. Braun, Patrice Bishop, Stull Stull & Brody, Los Angeles, CA, Harvey Greenfield, Law Firm of Harvey Greenfield, New York City, for Herbert Silverberg, plaintiff.

Kevin J. Yourman, Jordan L. Lurie, Elizabeth P. Lin, Weiss & Yourman, Los Angeles, CA, Joseph H. Weiss, Weiss & Yourman, New York City, for Charles McInnis, plaintiff.

Kevin M. Prongay, Jon W. Borderud, Prongay & Borderud, Los Angeles, CA, Reed R. Kathrein, William S. Lerach, Milberg Weiss Bershad Hynes & Lerach LLP, San Francisco, CA, Alison M. Tattersall, David R. Stickney, Milberg Weiss Bershad Hynes & Lerach LLP, San Francisco, CA, for Melvin Freedenberg, plaintiff.

Karen M. Hanson, Richard A. Lockridge, Lockridge Grindal Nauen & Holstein PLLP, Minneapolis, MN, Reed R. Kathrein, William S. Lerach, Alison M. Tattersall, David R. Stickney, Milberg

Weiss Bershad Hynes & Lerach LLP, San Francisco, CA, for George H. Rosenquist, plaintiff.

Steven M. Schatz, Gidon M. Caine, Catherine H. Winterburn, Theodore Allegaert, Wilson Sonsini Goodrich & Rosati, Palo Alto, CA, for defendants.

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' CORRECTED CONSOLIDATED COMPLAINT AND GRANTING PLAINTIFFS LEAVE TO AMEND

WILKEN, District Judge.

In this class action for securities fraud, Plaintiffs allege that Defendants knowingly misrepresented to the investment community that Secure Computing Corporation was growing and increasing its earnings during the class period. Defendants move to dismiss Plaintiffs' corrected consolidated complaint for failure to state a claim. Plaintiffs oppose the motion. A hearing on the motion was held on June 9, 2000. Having considered the papers filed by the parties and oral argument on the motion, the Court dismisses Plaintiffs' corrected consolidated complaint, with leave to amend.

## BACKGROUND

Defendant Secure Computing Corporation designs, develops, markets and sells a variety of security products and services for computer networks. *See* Corrected Consolidated Complaint (CCC) ¶¶ 3, 20. Individual Defendants Jeffrey H. Waxman, Timothy P. McGurran, Patrick Regester, Gary D. Taggart, Howard Smith and Christine Hughes were officers of Secure and members of its executive committee during the relevant time period. *See id.* ¶¶ 21–22. Plaintiffs allege that all six individual Defendants qualify as controlling persons and are collectively liable for the false statements of the company. *See id.* ¶¶ 23–24.

Plaintiffs are an uncertified class composed of all individuals who purchased or otherwise acquired Secure's common stock between November 10, 1998 and March 31, 1999, inclusive. *See id.* ¶ 1. Plaintiffs contend that, motivated by a "highly unusual compensation scheme" that rewarded short-term increases in the company's stock price, and through "hype and false financials," Defendants violated §§ 10(b) and 20(a) of the Securities and Exchange Act of 1934 and Securities and Exchange Commission (SEC) Rule 10b–5. *See id.* ¶¶ 2, 11.

Plaintiffs identify numerous statements made by or allegedly approved or adopted by Defendants, including statements made during an interview with *The Wall Street Transcript, see id.* ¶ 42; press releases, *see id.* ¶¶ 39, 43, 47; presentations to analysts and major investors, *see id.* ¶¶ 40, 45, 51, 54; reports by analysts, *see id.* ¶¶ 41, 46, 49, 52; and the company's financial statements for the fourth quarter of 1998, *see id.* ¶¶ 60–64. Plaintiffs allege that, for a variety of reasons, some of these statements were false or misleading. *See id.* ¶¶ 30–37, 59(a)–(g), 65–70. According to Plaintiffs, the facts plead give rise to a strong inference that Defendants' actions were at least deliberately reckless. *See id.* ¶¶ 28–29, 72–83.

During the period in which these alleged misrepresentations were made, Secure's stock price rose from just under $15 per share on November 10, 1998, the beginning of the class period, to highs in excess of $25 per share in late January, 1999. *See id.* ¶ 9 (chart). On March 31, 1999, the last day of the class period, Secure's stock price closed at over $10 per share. *See id.* After the close of trading on March 31, 1999, Secure issued a press release announcing that its revenues for the first quarter of 1999 were significantly below prior forecasts. *See id.* ¶ 56. The next day, Secure's stock price dropped to a low of $5 9/16 and ended the day at $5 7/8. *See id.* ¶ 58. According to Plaintiffs, the resulting damages that they incurred were

proximately caused by their reasonable reliance on the false and misleading statements made by Defendants. *See id.* ¶ 71.

## DISCUSSION

### I. Legal Standard

#### A. Rule 12(b)(6)

A motion to dismiss for failure to state a claim will be denied unless it appears that the plaintiff can prove no set of facts which would entitle it to relief. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Fidelity Fin. Corp. v. Federal Home Loan Bank of San Francisco,* 792 F.2d 1432, 1435 (9th Cir.1986). Dismissal of a complaint can be based on either the lack of a cognizable legal theory or the lack of sufficient facts alleged under a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir.1988).

#### B. Securities Fraud

In 1995, Congress enacted the Private Securities Litigation Reform Act of 1995 (PSLRA), Pub.L. No. 104–67, which amends the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a–78*ll.* Section 10(b) of the Securities Exchange Act of 1934 makes it unlawful for any person to "use or employ, in connection with the purchase or sale of any security ... any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe." 15 U.S.C. § 78j(b); *see also* 17 C.F.R. § 240.10b–5 (Rule 10b–5). To state a claim under § 10(b), a plaintiff must allege: "(1) a misrepresentation or omission of material fact, (2) reliance, (3) scienter, and (4) resulting damages." *Paracor Finance, Inc. v. General Elec. Capital Corp.,* 96 F.3d 1151, 1157 (9th Cir.1996); *see also McCormick v. Fund Am. Cos.,* 26 F.3d 869, 875 (9th Cir.1994).

Plaintiffs must plead securities fraud with particularity, pursuant to Rule 9(b) of the Federal Rules of Civil Procedure. *See In re GlenFed, Inc. Sec. Litig.,* 42 F.3d 1541, 1543 (9th Cir.1994) (en banc). Further, although Rule 9(b) does not require that scienter be plead with particularity, *see Concha v. London,* 62 F.3d 1493, 1503 (9th Cir.1995), the PSLRA does. *See* 15 U.S.C. § 78u–4(b)(2).

■ Rule 9(b) provides that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." The allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner,* 780 F.2d 727, 731 (9th Cir.1985). The PSLRA requires that the complaint "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u–4(b)(1).

Except with respect to allegations made on information and belief, the PSLRA pleading standard for allegations about the circumstances constituting fraud is the same as the Ninth Circuit's pre-PSLRA standard. Before the enactment of the PSLRA, plaintiffs were already required to plead specifically the time, place and nature of the alleged misrepresentations, *see Wool v. Tandem Computers, Inc.,* 818 F.2d 1433, 1439 (9th Cir.1987), and to explain why each alleged misstatement or omission was false or misleading when made, *see GlenFed,* 42 F.3d at 1549.

The PSLRA's requirement regarding allegations plead on information and belief is somewhat stricter than the Ninth Circuit's pre-PSLRA standard. For allegations made on information and belief, pre-PSLRA case law in the Ninth Circuit required "a statement of the facts upon which the belief is founded," *see Wool,* 818 F.2d at 1439, but did not expressly require

that plaintiffs specifically plead *all* facts upon which the belief was based. The PSLRA, however, requires exactly that. *See* 15 U.S.C. § 78u–4(b)(1).

## II. Corrected Consolidated Complaint

Plaintiffs identify or describe statements made by Defendants during the class period in two distinct sections of the CCC. First, in a section appearing under the heading "FALSE AND MISLEADING STATEMENTS," Plaintiffs identify several statements made in press releases, presentations and in an interview. *See* CCC ¶¶ 39–55. Second, in a section appearing under the heading "SECURE COMPUTING'S FALSE FINANCIAL REPORTING DURING THE CLASS PERIOD," Plaintiffs describe Secure's financial statements for the fourth quarter of 1998. The Court refers to the first set of allegations as the "non-accounting allegations," and to the latter set of allegations as the "accounting allegations." The Court addresses the non-accounting and accounting allegations of the CCC separately.

### A. Non–Accounting Allegations

#### 1. False and Misleading Statements

■ In *GlenFed*, the Ninth Circuit "reluctantly conclude[d]" that the district court had erred in dismissing with prejudice the complaint in that case. *See* 42 F.3d at 1549. While holding that some of the allegations that were "buried nearly 100 pages into the complaint" were sufficient to state a claim, *see id.* at 1551, the court also held that the complaint's sufficiency was "marginal," *see id.* at 1550, and that the bulk of the complaint was not plead with particularity, *see id.* at 1551. The court cautioned that its decision should "not be construed as an expression of satisfaction with the complaint ... We see nothing to prevent the district court, on remand, from requiring, as a matter of prudent case management, that plaintiffs streamline and reorganize the complaint before allowing it to serve as the document controlling discovery, or, indeed, before re-

quiring defendants to file an answer." *Id.* at 1554.

The court noted that the plaintiffs' complaint "at many points fail[ed] entirely to specify 'the manner in which [the] representations [at issue] were false and misleading.'" *Id.* at 1551 (quoting *Wool*, 818 F.2d at 1440). Even where the complaint pointed to specific facts that allegedly rendered certain statements false or misleading, "the connection [was] often elusive or illusory." *GlenFed*, 42 F.3d at 1553. Many of the allegations were not plead in compliance with Rule 9(b) because "they allege[d] contemporaneous (and ostensibly contradictory) conditions in such broad terms that defendants [were] given inadequate notice of the falsehood they [were] charged with." *Id.*

The court also criticized the plaintiffs' complaint for "rambl[ing] through long stretches of material quoted from defendants' public statements (many of which seem innocuous enough even by plaintiffs' recounting) unpunctuated by any specific 'reasons for falsity'—which, indeed, prove difficult to locate in the surrounding area." *Id.* at 1553–54. "A complaint is not a puzzle, ... and we are loathe to allow plaintiffs to tax defendants, against whom they have leveled very serious charges, with the burden of solving puzzles in addition to the burden of formulating an answer to their complaint." *Id.* at 1554.

The non-accounting allegations suffer from many of the same deficiencies that were criticized by the *GlenFed* court. Plaintiffs identify three press releases, *see* CCC ¶¶ 39, 43, 47; five presentations made by CEO Waxman and CFO McGurran to analysts, shareholders and the media, *see id.* ¶¶ 40, 45, 48, 51, 54; eleven reports by third-party analysts that allegedly incorporated some of the statements made by Waxman and McGurran during their presentations, *see id.* ¶¶ 41, 46, 49, 52, 55; and one interview with Waxman, *see id.* ¶ 42. Interspersed with these allegations are paragraphs noting a rise in Secure's stock price, the vesting of stock

options granted to the individual Defendants, and SEC filings by the individual Defendants noting their intent to sell Secure stock. *See id.* ¶¶ 44, 50, 53.

Nowhere, however, do Plaintiffs actually specify which of the statements identified were allegedly false or misleading when made. The accuracy of some of the statements does not appear to be challenged anywhere in the CCC. *See, e.g., id.* ¶ 39 (press release touting the quality of one of Secure's products and announcing an agreement with IBM). Plaintiffs specifically highlight quoted or paraphrased excerpts from other statements, suggesting that they do indeed intend to allege that these statements were false and misleading when made, but do not actually allege any facts tending to suggest that the statements were false or misleading. *See, e.g., id.* ¶ 45 (statements during presentations that, among other things, Secure expected to ship its "management console" product in the first quarter of 1999, and had been awarded several OEM contracts involving handheld devices). Plaintiffs actually appear to assume that some of the other statements that they identify were completely true, rather than false or misleading. *See, e.g., id.* ¶ 53 (SEC filings of individual Defendants' intent to sell shares).

The closest Plaintiffs come to specifying the actual statements that are alleged to be false or misleading is an allegation that Defendants "materially misled the investing public . . . by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make defendants' statements, as set forth herein, not false and misleading." *Id.* ¶ 59. However, because Plaintiffs obviously are not alleging that *every* statement by Defendants identified in the CCC was false or misleading when made, the reference to "statements, as set forth herein," is inadequate. Contrary to the requirements of Rule 9(b), the CCC does not allege "the circumstances constituting fraud or mistake . . . with particularity." Plaintiffs' al-

legations also fail to satisfy the PSLRA's requirement that the complaint "specify each statement alleged to have been misleading." 15 U.S.C. § 78u–4(b)(1).

Moreover, much like the portions of the complaint that the *GlenFed* court criticized, the section of the CCC containing the non-accounting allegations is "unpunctuated by any specific 'reasons for falsity.'" *See* 42 F.3d at 1554. Instead, this section of the CCC does nothing more than summarize Defendants' statements and the statements of third-party analysts. *See* CCC ¶¶ 39–55. To determine what precisely it is about these statements that was allegedly false and misleading, Defendants and the Court must look elsewhere. In paragraph 59 of the CCC, Plaintiffs identify, in broad brush strokes, several undisclosed factors that allegedly rendered false and misleading whichever of Defendants' statements it is that are alleged to be false and misleading. *See id.* ¶ 59(a)–(g) (alleging that demand for Secure's products was declining, that the company's operating trends were not as strong or stable as had been represented by Defendants, that Secure was manipulating its reported revenues through "channel stuffing," that Secure's indirect sales strategy was unsuccessful, that the company's sales cycle was increasing, and that international sales were foundering). The summary allegations of paragraph 59, in turn, reference numerous earlier and later paragraphs of the CCC. *See, e.g.,* ¶ 59(a) (citing ¶¶ 30–37, 76–77, 80–81). Several of these other paragraphs are cited in support of more than one allegedly undisclosed adverse factor.

In order to divine the purpose of the non-accounting allegations, Defendants and the Court would be required to speculate as to (1) which statements identified in the CCC were allegedly false or misleading when made, (2) for each such statement, which of the supposedly undisclosed adverse factors identified in the CCC rendered the statement false or misleading, and (3) how and why the numerous string-

cited other allegations of the complaint comprise an adequate basis for inferring that the alleged adverse factors did, in fact, exist. A complaint that requires such efforts to understand it does not comply with Rule 9(b) or the PSLRA. Both in the interests of prudent case management, *see GlenFed*, 42 F.3d at 1554, and based on the pleading requirements for allegations of securities fraud, Plaintiffs must reformulate their complaint in a more straightforward manner.

### 2. Information and Belief

Plaintiffs' CCC also fails to plead with particularity all relevant facts upon which they formed their belief in the allegations that are not based on personal knowledge. Pursuant to the PSLRA, "if an allegation regarding [a] statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u–4(b)(1).

Although few, if any, of the misrepresentations alleged in the CCC appear to be plead based on Plaintiffs' personal knowledge, none are specifically identified as being plead on information and belief. In any event, Plaintiffs fail to state with particularity all facts upon which they formed the beliefs alleged as facts in the CCC. For example, Plaintiffs allege that Secure's commercial division's sales were softening in the third quarter of 1998. *See* CCC ¶ 31. They also provide summary statistics for several regions that, assuming the statistics are accurate, arguably support this allegation. *See id.* ¶¶ 31–33 (percentage of third quarter target sales for Canada, United States, North America, America, Northern EMEA and Central EMEA [1] ). However, they do not state the source of these figures or the date on which sales were at these levels.

Plaintiffs also allege that Taggart and Regester attended sales meetings during the third quarter of 1998 in which certain sales problems were discussed, *see id.* ¶ 34, but Plaintiffs do not identify the dates of any of these meetings, or their basis for believing that these discussions took place at these meetings.

Most or all of the allegations that appear to be plead on information and belief are similarly unsupported. Upon a motion by the defendants, a complaint, such as the CCC, that does not meet the PSLRA's heightened pleading requirements, including the requirements for allegations plead on information and belief, must be dismissed. *See* 15 U.S.C. § 78u–4(b)(3)(A).

Plaintiffs argue that the CCC is, in fact, plead with sufficient particularity. Their argument is based primarily on *Zeid v. Kimberley*, 973 F.Supp. 910, 915 (N.D.Cal. 1997), *vacated*, 201 F.3d 446, 1999 WL 993649 (9th Cir.1999) (table of decisions without reported opinions), an opinion that was vacated by the Ninth Circuit on November 1, 1999—more than a month before Plaintiffs filed their consolidated complaint, more than two months before they filed their corrected consolidated complaint, and more than five months before they cited *Zeid* in their opposition to Defendants' motion to dismiss. Plaintiffs' failure to inform the Court that the opinion in *Zeid* had been vacated is particularly disturbing, because the law firm of Milberg, Weiss, Bershad, Hynes & Lerach, which is co-lead counsel for Plaintiffs in this case, was also co-lead counsel for the plaintiffs in *Zeid*.

Plaintiffs also cite *Greebel v. FTP Software, Inc.*, 194 F.3d 185, 193–94 (1st Cir. 1999), in which the First Circuit concluded that its pre-PSLRA requirements for pleading fraud on information and belief were consistent with the requirements of the PSLRA. However, the *Greebel* court also noted that the First Circuit has always been "notably strict and rigorous in applying the Rule 9(b) standard in securities fraud actions." *Id.* at 193. The fact that the PSLRA may not have changed

---

**1.** Plaintiffs do not explain what "EMEA" stands for, nor do they explain what region is meant by "America" as opposed to "North America" and "United States."

the already "strict and rigorous" standard applicable to allegations plead on information and belief in the First Circuit does not suggest that the same is necessarily true in the Ninth Circuit.

■ In any event, the Ninth Circuit has plainly interpreted the PSLRA to require that allegations not plead on personal knowledge be plead far more specifically than was previously required in this circuit. *See In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970 (9th Cir.1999). In the Ninth Circuit, alleged misrepresentations in private securities fraud actions that are not plead on personal knowledge must now be accompanied by a statement, *"in great detail,* [of] *all* the relevant facts forming the basis of [the plaintiffs'] belief." *Id.* at 985 (emphasis added).

The CCC is not plead with sufficient particularity, because it wholly fails to state "with particularity all facts on which [Plaintiffs'] belief [in the allegations of the CCC that are plead on information and belief] is formed." 15 U.S.C. § 78u–4(b)(1). In their first amended consolidated complaint, Plaintiffs shall specifically identify each allegation of fraud that is not based on Plaintiffs' personal knowledge, and for each such allegation shall plead with particularity all facts supporting Plaintiffs' belief that the allegation is true. *See* 15 U.S.C. § 78u–4(b)(1). Thus, for example, if Plaintiffs' sole basis for an allegation is a statement from a non-Plaintiff witness, Plaintiffs shall plead all facts on which they base their belief in that allegation.

Plaintiffs are not required, however, to state every fact that they possess that is in any way related to allegations that are plead on information and belief. The PSLRA requires them to "state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u–4(b)(1). "This means that a plaintiff must provide, in great detail, all the *relevant* facts forming the basis of her belief." *Silicon Graphics*, 183 F.3d at 985 (emphasis added).

■ For example, if Plaintiffs make an allegation that is based on a statement from a witness, they must reveal all facts about that witness that were material to the formation of their belief that the witness' statement is accurate. The precise amount of detail that they must reveal depends on the circumstances. If Plaintiffs relied on the witness' job position or relation to Secure in deciding to believe the witness, the witness' job position or relation to Secure must be disclosed in the complaint. If Plaintiffs make an allegation about information that is likely to be known only to a few individuals, the actual identity of the source may be material, in which case the identity of the source must be plead in the complaint in order to satisfy the PSLRA.

### 3. Statements Related to Secure's Performance During the First Quarter of 1999

■ The lack of specificity in Plaintiffs' pleading of their non-accounting allegations precludes a full analysis of the claims arising out of those allegations. It appears, however, that Plaintiffs are alleging at least that Defendants' repeated statements that Secure was "on track" to meet analysts' revenue estimates for the first quarter of 1999 (the "on track" statements) were false or misleading when made. *See* CCC ¶¶ 40, 45, 47, 48, 51, 54. It is not clear whether the other statements identified by Plaintiffs in the non-accounting allegations are alleged to have been false or misleading when made, independent of the "on track" statements, or whether these additional statements are plead in support of the allegation that the "on track" statements were false or misleading when made. For the time being, the Court considers only whether, leaving aside the pleading problems discussed above, Plaintiffs have adequately alleged that the "on track" statements were false or misleading when made.

■ The PSLRA includes a statutory safe harbor for certain forward-looking

statements. Pursuant to this provision, liability in a private securities action cannot be based on a forward-looking statement if the statement is identified as such and is accompanied by "meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement." *See* 15 U.S.C. § 78u–5(c)(A)(1). Moreover, even if the statement is not accompanied by meaningful cautionary statements, a person will be liable for making such a statement only if the plaintiff proves that the statement was made with actual knowledge that the statement was false or misleading. *See id.* § 78u–5(c)(B).

Independent of the statutory safe harbor, the judicially-created "bespeaks caution" doctrine immunizes certain forward-looking statements. "The bespeaks caution doctrine provides a mechanism by which a court can rule as a matter of law (typically in a motion to dismiss for failure to state a cause of action or a motion for summary judgment) that defendants' forward-looking representations contained enough cautionary language or risk disclosure to protect the defendant against claims of securities fraud." *In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1413 (9th Cir.1994) (citation and quotation marks omitted). In order to invoke the bespeaks caution doctrine, it is not enough that the defendants included some cautionary language. Rather, the defendants must "include enough cautionary language or risk disclosure that reasonable minds could not disagree that the challenged statements were not misleading." *Fecht v. Price Co.*, 70 F.3d 1078, 1082 (9th Cir.1995) (emphasis, citation, and internal quotation marks omitted).

The PSLRA defines the phrase "forward-looking statement" to include, among other things, a projection of revenues, income, earnings per share, capital expenditures, dividends, capital structure or other financial items. *See* 15 U.S.C. § 78u–5(i)(1)(A). A statement of the assumptions underlying such projections is also a forward-looking statement. *See id.* § 78u–5(i)(1)(D). Case law applying the bespeaks caution doctrine defines "forward-looking statement" in a similar manner. *See, e.g., Worlds of Wonder*, 35 F.3d at 1414 (doctrine applies to future projections, estimates and forecasts).

Defendants argue that their "on track" statements were protected by the statutory safe harbor, or, alternatively, by the bespeaks caution doctrine. They argue that the statements were forward-looking statements within the meaning of both the PSLRA's safe harbor and the bespeaks caution doctrine, and that they were accompanied by meaningful cautionary statements.

Defendants' statements that Secure was on track to meet analysts' earnings expectations for the first quarter of 1999 were, in part, projections that Secure would have quarterly earnings that were consistent with analysts' reported estimates. Plaintiffs, however, argue that these statements are actionable regardless of whether Secure ultimately met those expectations, because the statements were misrepresentations about current business conditions. By stating that Secure was on track to meet expectations, Defendants represented that a reasonable person who knew what Defendants knew at the time the statements were made could reasonably conclude that Secure was likely to meet analysts' expectations. Considered as statements of current business conditions, these statements were not forward-looking. For purposes of this order, the Court accepts Plaintiffs' representation that they are alleging that Defendants misrepresented current business conditions rather than alleging that the forward-looking aspects of Defendants' statements were false or misleading when made.[2]

---

**2.** The Court therefore does not address whether Defendants' statements were accom-

panied by meaningful cautionary language, and denies as moot Plaintiffs' counter-motion

However, even if those statements are considered as representations about current business conditions, and leaving aside the pleading problems discussed above, Plaintiffs have not alleged facts explaining why these statements were false or misleading when made. The CCC alleges that unspecified internal reports indicated that, as of the end of the third quarter of 1998, Secure was in poor financial shape. *See* CCC ¶¶ 30–38. However, the alleged misrepresentations about current business conditions all were made with reference to projected earnings for the first quarter of 1999. *See id.* ¶¶ 40, 45, 47, 48, 51, 54. Allegations that Secure's sales for the third quarter of 1998 were disappointing do not, on their own, support an inference that Secure could not have been on track to meet analysts' estimated earnings for the first quarter of 1999. Similarly, the CCC's allegations of improperly recognized revenue during the fourth quarter of 1998, *see id.* ¶¶ 60–71, do not, on their own, explain why Secure was not on track to meet analysts' estimates for the first quarter of 1999.

Indeed, aside from the statements made by Defendants, the only allegation in the CCC that directly refers to conduct during the first quarter of 1999 states that "Defendants admitted to [PaineWebber Analyst] Preissler that they had known that the [first] quarter [of 1999] would he heavily back-end loaded with 50% of the quarter's sales to come in the last week." *Id.* ¶ 81.[3] However, the fact that Defendants expected that half of Secure's projected sales for the quarter would be completed in its final week does not explain why

Secure was not, at any given time before that final week, on track to meet analysts' revenue estimates.

Based on knowledge of both the trends developing during the third quarter of 1998 and of further facts that are not alleged in the CCC, it is conceivable that Defendants could have known that Secure was not, as of the dates of the alleged misstatements, on track to meet analysts' estimates for the first quarter of 1999. It is also conceivable that Defendants knew, in light of the prematurely recognized revenue during the fourth quarter of 1998 and further facts that are not alleged in the CCC, that Secure was not on track to meet analysts' estimates for the first quarter of 1999. The CCC, however, fails to allege such further facts.

### B. Accounting Allegations

■ The accounting allegations describe statements made by Defendants about Secure's results for the fourth quarter of 1998. *See* CCC ¶¶ 60–71. According to Plaintiffs, Defendants materially overstated the company's revenue for the quarter by improperly recognizing revenue on a government contract. *See id.* ¶ 60. Specifically, Plaintiffs allege that, in the fall of 1998, Secure negotiated a $2 million contract with the federal government to make improvements to the Defense Messenger System (DMS), a secure electronic mail system. *See id.* ¶¶ 66, 68. Pursuant to the contract, DMS would be modified to incorporate certain network security technology. *See id.* Specifically, the government intended to modify Secure's "Sidewinder" security product to

to strike the McGurran declaration. Plaintiffs' argument in support of that motion, however, is well-taken. The PSLRA states that courts, in considering a motion to dismiss based on the safe harbor provision, "shall consider any statement cited in the complaint and any cautionary statement accompanying the forward-looking statement, *which are not subject to material dispute*, cited by the defendant." 15 U.S.C. § 78u–5(e). The oral statements cited by McGurran in his declaration, which apparently were not pre-

served in any verifiable transcript, are, for purposes of considering a motion to dismiss for failure to state a claim, subject to material dispute.

**3.** Plaintiffs also allege that Secure at some unspecified time switched from relying primarily on resellers to relying more substantially on a direct sales force. *See id.* ¶¶ 59(d), 77, 80. Plaintiffs do not allege the period during which this occurred.

work with "Fortezza," a proprietary encryption scheme used only by the federal government. *See id.* ¶ 67. The necessary modifications to Sidewinder were not expected to be completed until 1999. *See id.* ¶ 68.

Plaintiffs allege that, notwithstanding that the Sidewinder modifications were not yet completed, Secure recognized at least $1,520,621 in revenue on the contract during the fourth quarter of 1998. *See id.* ¶¶ 37, 68. According to Plaintiffs, this recognition of revenue was in violation of Generally Accepted Accounting Principles (GAAP) and SEC rules. *See id.* ¶¶ 62–65, 68–70.

As an initial matter, the allegations in the CCC do not specifically identify the actual allegedly fraudulent statements made by Defendants, but only allege the contents of those statements. It is not clear whether Plaintiffs base their accounting allegations on statements in Secure's January 26, 1999 press release about the company's results for the fourth quarter of 1998, Secure's SEC filings about those results, some other statements in which Defendants reported the company's quarterly results, or some combination of these statements. In their first amended consolidated complaint, Plaintiffs shall identify with particularity the precise statements that form the basis for their allegations of accounting fraud.

However, the contents of the allegedly fraudulent statements, and the reason why they were false or misleading when made, are alleged in relatively precise terms. With one exception, Defendants' arguments that these allegations are not sufficiently precise are not well-taken. Plaintiffs allege the specific quarter during which revenue was allegedly improperly recognized (fourth quarter of 1998), the identity of the parties to the relevant transaction (Secure and the federal government), the period during which the contract underlying the transaction was negotiated (fall of 1998), the total value of the contract ($2 million), an estimate of the

amount by which Secure overstated its revenues (at least $1,520,621) and the form of the alleged accounting impropriety (premature recognition of contingent revenue).

The Court agrees with Defendants, however, that Plaintiffs have not alleged facts that adequately explain why Secure was not entitled to recognize revenue on the DMS contract during the fourth quarter of 1998. Plaintiffs allege that the recognition of revenue was improper because the product was neither delivered nor ready for delivery, but the details of this assertion are somewhat vague. In paragraph 67 of the CCC, Plaintiffs allege that the "Air Force intended to modify Sidewinder to incorporate Fortezza." This suggests that any work Secure was required to perform may have been complete before the end of the fourth quarter of 1998, in which case it is not entirely clear why the company would not have been allowed to recognize revenue on the DMS contract. It is possible that the contract provided that payment was contingent upon the government's successful completion of its modifications to Sidewinder, but that is not alleged in the CCC. It is also possible that, in addition to the work the Air Force was to perform, Secure was required to make further modifications to Sidewinder, but that is not alleged in the CCC. In their first amended consolidated complaint, Plaintiffs shall clarify the precise reasons why Secure was not entitled to recognize revenue on the DMS contract during the fourth quarter of 1998.

Moreover, even if Plaintiffs had specifically identified the actual statements on which they base their claims of accounting fraud and explained in sufficiently precise terms the reason why the recognition of revenue on the DMS contract was premature, the accounting allegations would still be insufficient to state a claim. Although Plaintiffs describe most aspects of the allegedly improper recognition of revenue in great detail, the description appears to be plead on information and belief. Plaintiffs fail, however, to provide any facts upon

which their beliefs are based. *See supra* (describing the PSLRA's pleading requirements for allegations plead on information and belief). For example, Plaintiffs do not plead all of the relevant facts on which they base their belief that Secure recognized revenue on the DMS contract during the fourth quarter of 1998, or that the amount of prematurely recognized revenue was in excess of $1,520,621. Similarly, Plaintiffs fail to plead the facts on which they base their belief that Taggart conceived of the idea of "sticking the Sidewinders in a warehouse and putting a circle around them." CCC ¶ 68.

### C. Other Issues

Defendants argue that several of their statements that are identified in the CCC were mere puffery or true statements of historical fact, and thus are not actionable. Plaintiffs argue that such statements are sometimes actionable. However, as discussed above, Plaintiffs have yet to identify specifically which of these other statements were indeed allegedly false or misleading when made, and have not plead with particularity the reasons why they were false or misleading when made. The Court cannot evaluate the substantive merits of these allegations until Plaintiffs clarify precisely which statements were allegedly false or misleading when made and why.

Similarly, although the parties have briefed the issue of whether Plaintiffs' allegations raise a strong inference of deliberate recklessness, that issue is not ripe for adjudication. In order to determine whether Plaintiffs have adequately plead scienter, the Court must consider the complaint in its entirety. *See Silicon Graphics*, 183 F.3d at 985. Because Plaintiffs

must, as a result of this order, substantially amend their complaint, it makes little sense to consider whether the CCC raises a strong inference of deliberate recklessness, and the Court does not do so.[4]

■ Finally, the parties dispute whether, assuming that Plaintiffs have stated a § 10(b) claim against at least some Defendants, Plaintiffs have stated § 10(b) or § 20(a) claims against Regester, Taggart, Smith and Hughes. Defendants argue that the lack of any allegation that any of these Defendants made an actionable misstatement or omission bars liability. However, the Court agrees with Plaintiffs that they have plead facts sufficient to establish, at least at the pleading stage, that the "group published information" presumption applies to Regester, Taggart, Smith and Hughes.

"Group published information" is information contained in documents such as prospectuses, registration statements, annual reports and press releases. *See Wool*, 818 F.2d at 1440. The "group published information" presumption allows plaintiffs to rely "upon a presumption that the allegedly false and misleading 'group published information' complained of is the collective action of officers and directors." *In re GlenFed, Inc. Sec. Litig.*, 60 F.3d 591, 593 (9th Cir.1995). Defendants argue that the PSLRA abolished the group published information presumption, but no Ninth Circuit case has so held. Moreover, the majority of the district courts in the Ninth Circuit that have addressed the issue have concluded that the group published information presumption survives the PSLRA. *See, e.g., In re PETsMART, Inc. Sec. Litig.*, 61 F.Supp.2d 982, 997 (D.Ariz. 1999) ("the doctrine survives the PSLRA"); *Pegasus Holdings v. Veteri-*

---

**4.** The Court therefore does not determine, in this order, whether Plaintiffs have alleged a suspicious pattern of insider trading. However, it bears noting that Plaintiffs have not alleged any facts tending to suggest that the individual Defendants' vested but unexercised options should not be considered in determining whether the individual Defendants' sale of Secure stock suggests knowing or deliberately reckless conduct. Absent the pleading of such facts, the Court will consider vested but unexercised options in deciding whether the individual Defendants' trading of Secure stock was suspicious. *See Silicon Graphics*, 183 F.3d at 986–87.

*nary Ctrs. of Am., Inc.*, 38 F.Supp.2d 1158, 1165 (C.D.Cal.1998) ("non-speaking defendants may be held liable on a 'group pleading' theory"); *In re Stratosphere Corp. Sec. Litig.*, 1 F.Supp.2d 1096, 1108 (D.Nev. 1998) ("Defendants offer no case authority for their proposition that group pleading has been *sub silentio* abolished by the PSLRA, and this Court declines to adopt such a proposition"); *In re Silicon Graphics, Inc. Sec. Litig.*, 970 F.Supp. 746, 759 (N.D.Cal.1997); *but see Allison v. Brooktree Corp.*, 999 F.Supp. 1342, 1350 (C.D.Cal.1998).

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motion to dismiss Plaintiffs' CCC (Docket No. 31). Plaintiffs' counter-motion to strike the McGurran declaration is DENIED as moot (Docket No. 35). The Court dismisses Plaintiffs' CCC with leave to amend in accordance with this order. Plaintiffs shall serve and file their first amended consolidated complaint within forty-five days of the date of this order. Unless the Court orders otherwise or the parties stipulate to a longer period in which Defendants may respond, Defendants shall respond to the first amended consolidated complaint within twenty days of service.